Ronda REDMAN, Plaintiff,

v.

**LIMA CITY SCHOOL DISTRICT BOARD OF EDUCATION, et al., Defendants.**

No. 3:94CV7232.

United States District Court,
N.D. Ohio,
Western Division.

March 10, 1995.

Marc D. Mezibov, Sirkin, Pinales, Mezibov & Schwartz, Cincinnati, OH, for Ronda Redman.

Ronald S. Moening, Sr., Robison, Curphey & O'Connell, Toledo, OH, and Gregory B. Scott, and Julie C. Martin, Scott, Scriven & Wahoff, Columbus, OH, for Lima City School Dist. Bd. of Educ., Charles Buroker, and Tim Haller.

Bruce Comly French, Lima, OH, for Robert Hampshire.

## MEMORANDUM AND ORDER

CARR, District Judge.

This is a sexual harassment case in which the parties have filed cross-motions for summary judgment. Plaintiff brings her claims under 42 U.S.C. § 1983, 42 U.S.C. § 2000(e), O.R.C. § 4112.99, and Ohio common law. In her complaint, plaintiff names Robert Hampshire, the Lima City School District Board of Education (Board), Dr. Charles Buroker, and Timothy Haller as defendants. Defendants Buroker, Haller, and the Board oppose plaintiff's motion for partial summary judgment and move for summary judgment on all plaintiff's claims.[1] Defendant Hampshire has neither moved for summary judgment nor opposed plaintiff's motion for summary judgment. For the reasons stated below, plaintiff's motion for partial summary judgment shall be denied as to all defendants but Hampshire, and defendants' motion for summary judgment shall be granted. Plaintiff's motion for summary judgment against Hampshire shall be granted.

Plaintiff and Haller dated in 1993. At the suggestion of Haller, who was Superintendent of Custodians for the school district, plaintiff applied for a substitute custodian's job. Plaintiff was hired as a substitute custodian by the district. In September, 1993, plaintiff received a temporary appointment at Jefferson Elementary, where Hampshire was the principal. Plaintiff worked September 15 through September 17 before taking a leave for medical reason. During the three days, plaintiff alleges Hampshire approached her several times and invited her to get together after school and made other such comments to her. Plaintiff also alleges Hampshire rubbed his hand across plaintiff's back. During plaintiff's illness, Hampshire informed Haller that he would like plaintiff to return to his school. Haller acceded to Hampshire's request; on returning to work, plaintiff was again assigned to Jefferson.

On October 19, 1993, plaintiff's first day back to work, Hampshire followed her at work, complimented her on her appearance, and invited her to get together after work.

The following day plaintiff arrived at Jefferson at 6:30 a.m. to open the building and turn on the lights. Hampshire was already at the school. Hampshire invited plaintiff to join him in the boiler room. When plaintiff refused, Hampshire put his hand on the back of her neck and led her down the basement stairs. In the basement, Hampshire forced the plaintiff against the wall. Hampshire proceeded to fondle and rub against the plaintiff in a sexual manner. Plaintiff protested against Hampshire's actions. In response to Hampshire's unwelcome advance, plaintiff vomited. After plaintiff was sick, Hampshire released her and left the basement.

Early that afternoon, plaintiff spoke with Haller and told him of the incident. Haller told plaintiff that he would meet plaintiff at school when she reported to work the next morning so that she would not have to be alone with Hampshire. Haller met plaintiff the next two days. Later on those days, after Haller had left the school, Hampshire made sexually suggestive statements to the plaintiff.

On Sunday, Haller notified the assistant superintendent of plaintiff's allegations. The superintendent, Buroker, was notified, and the law firm of Squires, Sanders & Dempsey was retained to conduct an investigation. Patrice Baughman conducted the investigation and recommended that Hampshire be terminated from employment. A hearing was held following the investigation, and the referee recommended that Hampshire be dismissed. In response to the referee's finding, the Board fired Hampshire. He appealed his dismissal. The dismissal was upheld by the Allen County Court of Common Pleas.

As a preliminary matter, plaintiff asserts that this court is precluded from reinvestigating certain material facts because they are *res judicata.* This argument is premised on the fact that the referee's post-hearing findings were accepted by the Board and the

---

1. For purposes of this memorandum, the Board, Buroker, and Haller will be referred to as "the defendants."

Board's decision was upheld by the Allen County Court of Common Pleas.

The first issue is whether accepting the referee's findings as true has any effect on the outcome of the present litigation. According to his report (Doc. 37), the referee was concerned with only two issues:

1) Did Hampshire make unwelcome sexual comments and overtures to plaintiff between October 19–22, 1993?

2) If yes, should Hampshire's contract with the Lima City School District be terminated on the grounds of immorality and/or other good and just cause?

■ For purposes of their motions, defendants do not contest that Hampshire made such comments and overtures and that Hampshire should have been terminated; according to defendants, the facts underlying this litigation are undisputed. The referee, however, did not make any findings that Hampshire's actions created a hostile work environment or violated Title VII, leaving these issues of law unresolved. I agree with defendants that, even if the referee's findings of fact are *res judicata*, they are not determinative of defendants' liability under Title VII. *See* Restatement (Second) of Judgments § 27 (1982) (determination of issue of fact or law is only conclusive when it is actually litigated, determined by a final judgment, and the determination is essential to the judgment).

Defendants Haller and Buroker claim that they cannot be individually liable under Title VII. The Sixth Circuit has not confronted this issue. Most recent circuit court decisions have concluded there is no individual liability. *See Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993).; *Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 587–88 (9th Cir.1993); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) (per curiam); *Harvey v. Blake,* 913 F.2d 226, 227–28 (5th Cir.1990). Some courts, however, hold to the contrary. *See Paroline v. Unisys Corp.,* 879 F.2d 100, 106 (4th Cir.1989); *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1316 n. 1 (11th Cir.1989).

■ I agree with the courts denying individual liability. As the Ninth Circuit noted in *Miller,* the statutory scheme of Title VII indicates Congress did not intend to impose individual liability. Liability under Title VII is expressly limited to employers with fifteen or more employees because Congress "did not want to burden small entities with the costs associated with litigating discrimination claims." *Miller, supra,* 991 F.2d at 587. Given this protection for small employers, it is "inconceivable that Congress intended to allow civil liability to run against individual employees." *Id.*

Additionally, the Civil Rights Act of 1991 places caps on the availability of compensatory and punitive damages based on the size of an employer's workforce. 42 U.S.C. § 1981a(b)(3)(A–D). In *Miller,* the Court found, "if Congress had envisioned individual liability under Title VII for compensatory and punitive damages, it would have included individual in this litany of limitation and would have discontinued the exemption for small employers." *Miller,* 991 F.2d at 588 n. 2. Because of the great weight of authority denying individual liability and the persuasiveness of its reasoning, I conclude there is no individual liability. Accordingly, summary judgment shall be granted as to plaintiff's Title VII claims against Haller and Buroker.

■ Both plaintiff and defendants move for summary judgment on plaintiff's *quid pro quo* claim of sexual harassment. To prevail on a *quid pro quo* claim of sexual harassment, plaintiff must assert and prove: 1) she was a member of a protected class; 2) she was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; 3) the harassment was based on sex; 4) her submission to the unwelcome advances was an express or implied condition for receiving job benefits or refusal to submit to a supervisor's sexual demands resulted in a tangible job detriment; and 5) the existence of respondeat superior liability. *Highlander v. K.F.C. Nat'l. Management Co.,* 805 F.2d 644, 648 (6th Cir.1986).

It is undisputed that plaintiff has established the first three elements of a *quid pro quo* claim. As a female, plaintiff is a member of a protected class. She was subjected

to unwelcome sexual harassment by Hampshire, and the harassment was based on sex.

■ Plaintiff claims that Hampshire's refusal to allow her to work, because she complained to Haller of Hampshire's actions, was sufficient to satisfy the fourth element. Hampshire's action, however, was not in response to plaintiff's failure to submit to his advances but was instead in response to plaintiff's complaints of sexual harassment. Plaintiff's claim is not of *quid pro quo* sexual harassment but rather asserts a claim of retaliation. In some circumstances, retaliation can be a basis for a *quid pro quo* claim, however; the adverse action must be taken in retaliation against the plaintiff for her failure to submit to the defendant's advances.

Because plaintiff has failed to set forth facts supporting a prima facie *quid pro quo* claim, summary judgment must be granted to defendants.

■ Plaintiff and defendants also move for summary judgment on plaintiff's hostile work environment claim. For plaintiff to prevail on her claim of sexual harassment due to a hostile work environment she must prove:

1) the employee was a member of a protected class; 2) the employee was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; 3) the harassment complained of was based upon sex; 4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment; and 5) the existence of respondeat superior liability.

*See Harris v. Forklift Systems, Inc.,* —— U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *Rabidue v. Osceola Ref. Co.,* 805 F.2d 611, 619–20 (6th Cir.1986).

The first three elements are uncontested. Plaintiff is female; thus, she is a member of a protected class. The plaintiff was subjected to unwanted sexual harassment which was based on her sex.

■ Defendants claim that plaintiff has failed to establish that the harassment was sufficiently pervasive and severe to meet the fourth element. For plaintiff to prevail she must establish that the workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris,* at ——, 114 S.Ct. at 370, (*citing Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986)). Conduct that is not severe or pervasive enough that a reasonable person would find it hostile or abusive "is beyond Title VII's purview." *Id.* In *Harris,* the Supreme Court also stated that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at ——, 114 S.Ct. at 371.

■ The incident in which plaintiff is sexually assaulted by Hampshire is an example of extremely severe sexual harassment. *See, Campbell v. Kansas State University,* 780 F.Supp. 755 (D.Kan.1991). In addition, plaintiff was subjected to lesser forms of sexual harassment. Hampshire made numerous sexual comments to plaintiff. He also followed her around the school and watched her work while he ate lunch. Although these other incidences in themselves may not rise to an actionable level when they occur over a period of short duration, in combination with the physical assault, I conclude that a rational fact-finder could conclude that plaintiff was subjected to sex-based conduct that was so severe and pervasive that she could prevail on her hostile environment claim.

■ To establish the fifth element of a hostile work environment claim the plaintiff must also establish respondeat superior liability on the part of the Board based on traditional agency principles. *Kauffman v. Allied Signal, Inc., Autolite Div.,* 970 F.2d 178, 183–84 (6th Cir.1992); *Yates v. Avco Corp.,* 819 F.2d 630 (6th Cir.1987).

In ascertaining whether Hampshire was an agent of the Board, it must first be determined whether Hampshire should be treated as a supervisor or a co-worker of plaintiff, because the standard of employer liability differs depending on the harasser's status. *Kauffman,* 970 F.2d at 183. Defendants contend that Hampshire should not be considered a supervisor because he had no power to hire, fire, or discipline plaintiff. Plaintiff, however, has set forth several facts indicating that Hampshire did exert significant control over plaintiff. Haller stated that the custodian is under the supervision of the building's principal. (Haller Dep. 29). Hampshire also had the authority to have a custodian removed from working at his building and the authority to recommend that an individual work at his building. In fact, Hampshire exercised this authority in respect to plaintiff. *Id.* at 30. His request that plaintiff be assigned to his school was honored. I conclude, therefore, that a question of fact exists as to whether Hampshire had enough control over plaintiff's conditions of employment to qualify as an agent for the Board.

However, agency liability is not strict and can be negated. *Id.* at 184. The determination of whether the Board is liable for Hampshire's actions depends on:

1) whether Hampshire's harassing actions were foreseeable or fell within the scope of his employment, and

2) even if they were, whether the Board responded adequately and effectively to negate liability.

*Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 803 (6th Cir.1994).

Because the alleged harassment took place during working hours, at the school, and was carried out by an individual in a supervisory position, I conclude that Hampshire's conduct was within the scope of his employment.

I find, however, that the Board adequately and effectively responded to Hampshire's sexual harassment. Plaintiff complained to Haller the day of the physical assault. Although Haller was not completely convinced of the veracity of plaintiff's claim, he met the plaintiff at school the following two mornings to prevent plaintiff from being alone with Hampshire at the school. That weekend Haller notified Terry Hill, the assistant superintendent, of plaintiff's allegations. The Board immediately hired a law firm to conduct an investigation of Hampshire. The investigation was concluded within a month, and it was recommended that Hampshire's employment be terminated. No harassment occurred after Buroker became aware of plaintiff's allegations of harassment. In this case, I conclude that the Board took immediate and appropriate corrective action.

Plaintiff also argues that the Board should have known that Hampshire had a history of sexually harassing female employees. Plaintiff relies on the statements of Stephanie Williams and Michelle Conaway that Hampshire told them that they had beautiful or sexy legs. Plaintiff, however, puts forth no evidence that either Williams or Conaway reported Hampshire's comments. There is no evidence that indicates that the defendants had any knowledge that Hampshire may have had a history of sexual harassment. Furthermore, I conclude that no reasonable factfinder could find that these two incidences should have been sufficient to alert defendants that Hampshire was going to physically assault plaintiff.

Plaintiff also argues that the school system's policy against sexual harassment was insufficient. Plaintiff contends that it was not sufficiently publicized to the employees. The court in *Kauffman* found it immaterial as to what one may think of an organization's sexual harassment policy *ex ante.* *Kauffman, supra,* 970 F.2d at 185. What is important is whether it was adequate in the present situation. Because defendants immediately and adequately responded to Hampshire's harassment, the Board shall be granted summary judgment on plaintiff's claim of a hostile work environment.

Defendants also move for summary judgment on plaintiff's § 1983 claims. Haller and Buroker argue that they have qualified immunity as to the claims against them. The Supreme Court has recognized a qualified immunity for school official in

§ 1983 actions. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Sixth Circuit has held that a supervisor will not be liable under § 1983 even if the supervisor has failed to supervise, control, or train the offending individual. *Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir. 1988). Rather, the supervisor must have "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* (*quoting Hays v. Jefferson County,* 668 F.2d 869 (6th Cir. 1982)). Plaintiff presents no evidence that Haller or Buroker encouraged or participated in any harassment of plaintiff. Accordingly, summary judgment shall be granted to Haller and Buroker on plaintiff's § 1983 claims.

■ Furthermore, under § 1983 the Board cannot be liable for the actions of its employees. In *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), the Supreme Court held that a municipality may not be held liable under § 1983 based on a theory of *respondent superior;* instead, a government is responsible under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* Because there is no evidence of such a pattern or policy in this case, defendants' motion for summary judgment as to plaintiff's § 1983 claim shall be granted.

Defendants also move for summary judgment on plaintiff's state law claims of sexual harassment under O.R.C. §§ 4112.02, 4112.99, tortious acts of sexual harassment, intentional infliction of emotional distress, and assault and battery.

■ Sexual harassment in the form of a hostile work environment or *quid pro quo* harassment is unlawful under § 4112.02. *Helmick v. Cincinnati Word Processing, Inc.,* 45 Ohio St.3d 131, 543 N.E.2d 1212 (1989). The Ohio Supreme Court has held that courts should apply Title VII federal cases to interpret issues in sexual harassment cases. *Little Forest Med. Center of Akron v. Ohio Civ. Rights Comm.,* 61 Ohio St.3d 607, 609–10, 575 N.E.2d 1164 (1991).

As noted above, I find that defendants, on discovering Hampshire's actions, acted promptly and adequately. Therefore, summary judgment shall be granted to defendants as to plaintiff's claim under § 4112.02 and 4112.99.

■ Plaintiff also brings a state common law claim of sexual harassment against defendants. The Ohio Supreme Court has found that employers may be liable for workplace sexual harassment as a matter of common law. *Kerans v. Porter Paint,* 61 Ohio St.3d 486, 487, 575 N.E.2d 428 (1991). The court in *Baab,* interpreting *Kerans,* concluded that courts must determine if the employer was negligent in failing to prevent the malfeasance. *Baab v. AMR Services Corp.,* 811 F.Supp. 1246, 1267 (N.D.Ohio 1993). In so doing, it is necessary to determine whether there:

> is evidence in the record suggesting that the [harassing] employee has a past history of sexually harassing behavior about which the employer knew or should have known.

*Kerans,* 61 Ohio St.3d at 493, 575 N.E.2d 428.

■ As discussed above, plaintiff fails to set forth sufficient evidence that Hampshire had a past history of sexually harassing behavior of which the Board, Buroker, or Haller knew or should have known. Accordingly, summary judgment shall be granted to defendants as to plaintiff's common law sexual harassment claim.

■ Lastly, defendants claim that the Board is not liable for assault and battery and intentional infliction of emotional distress. Under *Kerans,* an employer is liable for the torts committed by his employee that were within the scope of his employment or of which the employer knew or should have known. *Kerans,* 61 Ohio St.3d at 487, 575 N.E.2d 428. As noted above, I conclude that no reasonable trier of fact could find that the Board knew or should have known Hampshire would pose a danger to female employees. Therefore, summary judgment shall be granted to defendants on this issue.

Plaintiff's motion for summary judgment against Hampshire, who failed to respond to plaintiff's motion, shall be granted by default.

For the reasons set forth above, it is

**ORDERED THAT** defendants Dr. Charles Buroker's, Timothy Haller's, and the Lima City School District Board of Education's motion for summary judgment shall be granted; and it is

**FURTHER ORDERED** that plaintiff's motion for partial summary judgment against defendants Buroker, Haller, and the Lima City School District Board of Education shall be denied; and it is

**FURTHER ORDERED** that plaintiff's motion for summary judgment against defendant Robert Hampshire shall be granted.

**So Ordered.**