**Florence Rose GARCIA, Plaintiff,**

v.

**ANR FREIGHT SYSTEM, INC., et al., Defendants.**

**No. 3:95CV7514.**

United States District Court, N.D. Ohio, Western Division.

Sept. 23, 1996.

Richard A. Cathey, Jr., James W. Hart, Flynn, Py & Kruse, Sandusky, OH, for plaintiff.

Nancy A. Noall, Vincent L. Cheverine, Walter & Haverfield, Cleveland, OH, for defendants.

## MEMORANDUM AND ORDER

CARR, District Judge.

This is a sexual harassment case in which plaintiff alleges that defendants ANR Freight System, Inc. (ANR) and Steve Rose (Rose) subjected her to a hostile work environment in violation of Title VII and the common law of Ohio, which resulted in her constructive wrongful discharge. Plaintiff also asserts a state law claim of intentional infliction of emotional distress.[1] This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332. Pending is defendants' motion for summary judgment. (Doc. 22). For the following reasons, defendants' motion shall be granted.

In March 1994, defendant ANR promoted Steve Rose from Territory Manager in Toledo to Assistant Manager of Inside Sales in Denver. ANR then assigned Florence Rose Garcia, formerly an Inside Sales Representative in Denver, to replace Rose as Toledo Territory Manager. To orient plaintiff, ANR instructed defendant Rose "to show [plaintiff] the territory and introduce [plaintiff] to current business." (Garcia Dep. at 75). Plaintiff alleges that during this five-day training period defendant Rose committed at least three sexually harassing acts: grabbing the back of plaintiff's head and guiding it toward his lap, asking to spend the night in plaintiff's motel room, and brushing his hand against plaintiff's breast. Each incident lasted for a few seconds and ceased upon plaintiff's expression of discomfort.

Although plaintiff did not formally report these three incidents of harassment, ANR's upper management, specifically Toledo Freight Manager Tom Listello and District Sales Manager Joe Beauregard, informally heard about the incidents and expressed their support if plaintiff wished to file a formal complaint. Even though plaintiff did not pursue the claims internally, ANR showed Rose a "sensitivity training" video. After the three days of orientation with plaintiff, Rose left for his new post in Denver. The only communication between plaintiff and Rose since his move westward was a single phone call, wherein Rose allegedly said "hi" in a sexually suggestive tone.

During the first few weeks of her new job, plaintiff struggled to perform her duties as Territory Manager, the office seemed in general disarray, and plaintiff received little assistance from her supervisors. She had difficulty learning the Toledo area, missed her children who still lived in Denver, and felt unable to call defendant Rose, her predecessor, for help or guidance. At least three other employees recently promoted to Territory Manager were also given little assistance or guidance.

---

1. In her complaint, plaintiff originally alleged six counts against ANR, Rose, or both: sexual harassment (both), hostile work environment (both), sex discrimination (ANR), wrongful discharge (ANR), intentional infliction of emotional distress (both), and battery (Rose). On February 2, 1996, the parties stipulated to the dismissal of the sexual harassment and hostile work environment claims as to Rose, as well as the battery allegation against Rose. Thus, the pending motion for summary judgment addresses the sexual harassment (hostile work environment and quid pro quo), sex discrimination, and wrongful discharge claims as to ANR only and the emotional distress claim as to both ANR and Rose. Because plaintiff, in her brief opposing summary judgment, does not reassert the claim of sexual discrimination, contest the defendants' arguments against the charge of sexual discrimination, or allege any facts in support of a sexual discrimination charge, I deem plaintiff to have abandoned the sexual discrimination claim. In this memorandum, I will therefore address the claims of sexual harassment, wrongful discharge, and intentional infliction of emotional distress.

During this period, plaintiff experienced migraine headaches, general nervousness, involuntary twitching in her eyes, and vomiting. Ultimately, plaintiff left the job in Toledo on June 20, 1994, claiming a wrongful constructive discharge. Plaintiff then drove back to Denver, met with James Regan, ANR's Vice President for Human Resources, and asked to return to her Denver telemarketing job. The company denied her transfer request.

Plaintiff subsequently filed a claim with the Equal Opportunity Employment Commission, received an EEOC "right to sue" letter, and filed this suit on September 6, 1995. Following a mediation session, the deposition of plaintiff and others, and the dismissal of counts I, II, and VI against defendant Rose, defendants now move for summary judgment, contending that no genuine issue of material fact exists as to the remaining counts of sexual harassment, wrongful discharge, and intentional infliction of emotional distress and that defendants are entitled to summary judgment as a matter of law. I agree.

### Sexual Harassment

■ Under federal law, Title VII of the Civil Rights Act of 1964 forbids discrimination "with respect to compensation, terms, conditions or privileges of employment because of [an] individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1). Sexual harassment in the workplace that either creates a "hostile work environment" or involves a "quid pro quo" in which a supervisor demands sexual favors for job benefits [2] violates Title VII. *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 182 (6th Cir.1992); *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 618 (6th Cir. 1986). The occurrence of sexual harassment is judged in light of "the record as a whole" and "the totality of the circumstances, such as the nature of the sexual advances and the

context in which the alleged incidents occurred." *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 61, 106 S.Ct. 2399, 2402–03, 91 L.Ed.2d 49 (1986).

■ To prevail in a claim of gender-based hostile work environment, a plaintiff must assert and prove that:

(1) the employee was a member of a protected class; (2) the employee was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment; and (5) the existence of respondeat superior.

*Fleenor v. Hewitt Soap Co.,* 81 F.3d 48, 49 (6th Cir.1996); *Rabidue,* 805 F.2d at 619–20; *Kauffman,* 970 F.2d at 178; *Redman v. Lima City School Dist. Bd. of Educ.,* 889 F.Supp. 288 (N.D.Ohio 1995).

The first three elements, for purposes of this motion, cannot be contested: plaintiff is a member of a protected class (women); she claims that she was subjected to sexual advances, as well as verbal and physical conduct of a sexual nature; and this harassment was based upon sex. Because, however, plaintiff fails to present a genuine issue of material fact on the fourth and fifth elements, defendant ANR is entitled to summary judgment as a matter of law on the hostile work environment claim.

■ For plaintiff to satisfy the fourth element of her hostile work environment claim, she must establish the workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the

---

**2.** The "quid pro quo" type of sexual harassment occurs when a supervisor makes an unwelcome sexual advance as "an express or implied condition for receiving job benefits" or when "a tangible job detriment resulted from the failure to submit to the [supervisor's] sexual demands." Based on her complaint and response to defendants' summary judgment motion, plaintiff does not clearly assert a "quid pro quo" sexual

harassment claim. In addition to not explicitly asserting a quid pro quo claim nor contesting defendants' arguments in opposition to a "quid pro quo" allegation, plaintiff fails to demonstrate that Rose exerted any authority over or acted as a supervisor to plaintiff. See *infra* note 4. Thus, it is unnecessary to consider a "quid pro quo" allegation on its merits.

victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (*quoting Meritor Savings Bank*, 477 U.S. at 65, 67, 106 S.Ct. at 2404–05, 2405); *Redman*, 889 F.Supp. at 293. Whether an environment is hostile or abusive can be determined by looking at "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. at 369; *Redman*, 889 F.Supp. at 293. The actions complained of must have "created an objectively hostile or abusive work environment—an environment that reasonable person would find hostile or abusive." *Scott v. Central School Supply*, 913 F.Supp. 522, 529 (E.D.Ky.1996) (*quoting Harris*, 510 U.S. at 21, 114 S.Ct. at 368).

█ Plaintiff's workplace, I conclude, was not so permeated with discriminatory intimidation, ridicule and insult so as to "alter the conditions of plaintiff's employment" and "create an abusive working environment." Rose's behavior, however unjustified and unwelcome, occurred on three occasions during a five-day orientation period. The alleged incidents were random, isolated, and brief. One of the incidents—Rose asking to spend the night at plaintiff's motel—involved no physical interaction whatsoever and the other two incidents lasted, at most, a few seconds. Each incident ended immediately after plaintiff expressed her disgust. After the orientation period, Rose left Toledo and all harassment ended. Besides Rose, no other ANR employee, co-worker, or manager is alleged to have harassed plaintiff.

Finally, and most persuasively, the three alleged incidents occurred during plaintiff's job orientation, during the first week of her employment as Toledo Territory Manager. At that initial phase of her employment as Toledo Territory Manager, plaintiff was familiarizing herself with the office, her territory, the city, and her duties. Even if alleged incidents interfered with her ability to meet contacts, observe procedures, and absorb information, it cannot be said, based on the totality of the circumstances and in light of the record as a whole, that plaintiff's work environment during her tenure as Toledo Territory Manager was "permeated" with insult, humiliation, and hostility. The alleged incidents of harassment did not "alter the conditions" of plaintiff's employment or "unreasonably interfere" with plaintiff's job performance. In sum, based on the totality of the circumstances, plaintiff has not sufficiently shown that pervasive, severe harassment over the course of her entire Toledo employment created an abusive environment that unreasonably interfered with or altered her employment. Being unable to establish the fourth element of her allegation, plaintiff cannot maintain a hostile work environment claim.

█ Even if the three alleged incidents of harassment, based on the totality of the circumstances, unreasonably filled plaintiff's work environment with intimidation, ridicule, and humiliation so as to alter her working conditions, plaintiff's hostile work environment claim nonetheless fails to meet the fifth element: the existence of respondeat superior.[3] Because Rose in this case was a co-worker,[4] defendant ANR can only be liable if

3. Respondeat superior, as noted by the Sixth Circuit, is an incorrect label for harassment cases where a co-worker creates the hostile work environment. In respondeat superior cases, the employer is derivatively liable, through no fault of its own, for the actions of an employee. In co-worker harassment cases, the employer is directly liable on the theory that it knew or should have known of the employee's propensity for harassment and failed to take precautionary measures to prevent any harassment from occurring. *See Pierce v. Commonwealth Life Insurance Co.*, 40 F.3d 796, 804 n. 11 (6th Cir.1994). For ease of analysis, however, I will refer the fifth element of the hostile work environment claim as the "respondeat superior" element.

4. In her brief opposing summary judgment, plaintiff argues that Mr. Rose possessed the "apparent authority" to supervise and/or control plaintiff during the orientation period and thereafter. (Plaintiff's Brief at 9–10). Plaintiff admits, however, that she did not report to Rose, Rose did not evaluate her, and Rose was not her "boss." (Garcia Dep. at 109). It is undisputed that Rose had no authority, actual or apparent, over plaintiff after his transfer to Denver. The question, then, is whether Rose had "apparent

it "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Fleenor*, 81 F.3d at 50; *Rabidue*, 805 F.2d at 621. Stated simply, "this standard is one of failure-to-correct-after-notice or duty to act after knowledge of harm." *Fleenor*, 81 F.3d at 50. However formulated, liability attaches only if an employer knows of the potential for harassment *and* fails to act in response to that knowledge.

Prior to the alleged incidents in late March 1994, defendant ANR did not know—nor does evidence on record indicate that it should have known—of Rose's alleged propensities for harassment. No formal complaint had ever been filed against Rose prior to the alleged incidents, nor did informal reports indicate to ANR's management that Rose might harass employees in the future. In her deposition, plaintiff describes incidents where Rose allegedly harassed other male employees and was considered a "pig." Prior to the alleged harassment of plaintiff, there is no evidence that any co-worker either formally reported or informally mentioned Rose's harassing propensities directly to ANR's management. Although a few employees seemed to think Rose was a "pig" who talked in a "sexual manner" (Garcia Dep. at 279), these employees apparently made no deliberate efforts to convey this information to anyone in ANR's management with authority to discipline or rectify such behavior. Plaintiff has not, with any degree of specificity, pointed to an upper-level ANR manager who directly knew, was in a position to know, or should have known about either Rose's harassment of others or the lack of co-worker respect for Rose. There is no evidence on the record to support the notion that anybody inside ANR—employee, co-worker, or otherwise—put management on notice of Rose's alleged propensity to sexually harass his co-workers.

Plaintiff also contends that ANR had notice of Rose's harassing conduct from an outside source: namely a Sandusky customer, Cook Composites & Polymers Company (Cook), who complained of Rose's conduct and demanded that Rose never call on that customer again.[5] In response to this single report from an outside source in Sandusky, ANR—specifically the Vice President of marketing and national sales—investigated the complaint and concluded that the complaint against Rose dealt with a personality conflict and generally unprofessional conduct, not sexual harassment. This incident did not cause ANR to know of Rose's potential for sexually harassing behavior prior to alleged incidents involving plaintiff. Therefore, plaintiff cannot establish the fifth element of respondeat superior[6] and her hostile work

---

authority" over plaintiff during the five-day training period.

As plaintiff's predecessor, Rose's sole duty was to impart to plaintiff as much job-related knowledge as possible. Rose likely possessed more job-related knowledge (although plaintiff's prior job was quite similar in substance to her former job) and more seniority, but knowledge and seniority alone do not amount to "apparent authority." "Essential" to a finding of apparent authority is that plaintiff "had reason to believe and did believe that the agent possessed the necessary authority." *Logsdon v. ABCO Construction Co.*, 103 Ohio App. 233, 241–42, 141 N.E.2d 216 (1956). In this case, plaintiff knew that Rose was only training her and did not have any authority over her—actual, apparent, or otherwise. Thus, Rose can only be considered a co-worker and ANR's liability must be analyzed under the "co-worker" standard.

**5.** Defendants have moved to strike an affidavit by Vickie Searles that describes this Sandusky incident. Because I am granting defendants' motion for summary judgment on the hostile work environment for other reasons besides plaintiff's failure to establish notice of Rose's propensities for harassment, the motion to strike shall be overruled as moot.

**6.** Furthermore, once informed of plaintiff's allegations, ANR responded with prompt and appropriate action: plaintiff's supervisors informed her of the right to file an official complaint; plaintiff's supervisors indicated they would "totally support" her claim and "stand up" for her (Garcia Dep. at 146–47); ANR ensured that Rose remained in Denver, thus significantly reducing the likelihood of future harassment; ANR admonished Rose for his conduct, indicated such conduct is not acceptable, and later had him watch a "sensitivity training" video (Garcia Dep. at 183); and finally ANR denied plaintiff's request to return to her former telemarketing job in Denver where she would have potentially been under the direct supervision of Rose. There is no reason to believe, the record does not indicate, nor does any evidence suggest, that ANR did not promptly and appropriately respond to and take very seriously every allegation of sexual harassment within their workforce, including plaintiff's.

environment claim must fail as a matter of law.

Both because plaintiff neither demonstrates that defendant's behavior created a hostile working environment nor that respondeat superior liability existed, plaintiff's hostile work environment claim must fail as a matter of law. Therefore, summary judgment is granted on the Title VII hostile work environment claim.

 Under state common law,[7] as set forth by the Ohio Supreme Court, summary judgment may not be granted in favor of the employer "where there is evidence in the record suggesting that the employee has a past history of sexually harassing behavior about which the employer knew or should have known." *Kerans v. Porter Paint Co.,* 61 Ohio St.3d 486, 493, 575 N.E.2d 428 (1991). In *Kerans,* the employer had ample opportunities to know of the harasser's "perverse sexual proclivities" because one employee complained to management about the harassment on four different occasions and twice, because of the harassment, requested a transfer. *Id.* Another employee testified that "there were four or five other incidents involving sexual molestation by [the harasser] which were reported to the Porter management." *Id.*

 In plaintiff's memorandum opposing summary judgment, she alleges ANR should have known about Rose's potential for harassment because other employees disrespected Rose and thought he was a pig and because of the external complaint about Rose by Cook. However, when compared to the facts of *Kerans,* it cannot be said that there is a genuine issue of material fact as to whether ANR knew or should have know about Rose's alleged propensity for harassment. First, no ANR employee ever complained to management about Rose's behavior, as was done at least nine times in *Kerans.* Second, the information in *Kerans*

was conveyed directly from insider employees to management whereas the information came to ANR's attention from external sources without regard to ANR's internal policy forbidding all forms of sexual harassment. Finally, Cook's information was second-hand (i.e., the manager reporting Rose's alleged harassment was not actually harassed but only reporting about another Cook employee's alleged complaint) while the information in *Kerans* came directly from the victims of the harassment.

The type of information allegedly conveyed in this case—general unreported internal sentiment and second-hand, indirect external reports—is too diffuse, attenuated, and remote to convey knowledge sufficient to put ANR on notice of Rose's alleged harassing propensities. ANR's first-hand, direct knowledge indicated that the Cook problem did not involve sexual harassment and plaintiff presents no other evidence that ANR knew otherwise. In conclusion, without a more direct and concrete explanation of how ANR knew or should have known about Rose's alleged propensities, *Kerans* is distinguishable and summary judgment is appropriate on plaintiff's state common law claim of sexual harassment.

### Wrongful Discharge

 In addition to her Title VII and Ohio common law claims of sexual harassment, plaintiff contends that "she was constructively discharged from employment at ANR based upon the hostile work environment which was created by Mr. Rose's sexual harassment." (Plaintiff's Brief at 14). ANR employed plaintiff on an at-will basis—a fact plaintiff does not contest. Therefore, in order to maintain a wrongful discharge suit, plaintiff must first identify an applicable exception to the at-will doctrine of employment. Toward this end, plaintiff asserts that her constructive wrongful discharge based on sexual harassment violates public policy,[8]

---

**7.** Although plaintiff does not allege sexual harassment under O.R.C. § 4112.02, the elements of a hostile work environment state statutory claim are identical to the elements of hostile work environment under Title VII. See *Delaney v. Skyline Lodge, Inc.,* 95 Ohio App.3d 264, 642 N.E.2d 395 (1994). For the same reasons that plaintiff fails to survive summary judgment un-

der Title VII, she would—although not alleged— fail to survive summary judgment under O.R.C. § 4112.02.

**8.** The logic behind plaintiff's constructive wrongful discharge claim, as I understand it, is as follows: sexual harassment violates public policy, harassment in this case reached a level of

thus bringing her under an exception to her at-will employment status. *See Collins v. Rizkana,* 73 Ohio St.3d 65, 652 N.E.2d 653 (1995) (recognizing that wrongful discharge on the basis of sexual harassment does state a viable cause of action and constitutes a public policy exception to the general rule of employment at will).

In order to assert a constructive wrongful discharge cause of action, plaintiff must produce evidence "that a reasonable person would find [her] working conditions so intolerable that [she] would voluntarily resign." *Schwartz v. Comcorp, Inc.,* 91 Ohio App.3d 639, 644, 633 N.E.2d 551 (1993). Plaintiff fails to produce such evidence in this case. The three isolated allegations of sexual harassment occurred at the very inception of her tenure as Toledo Territory Manager. After the alleged incidents of harassment, Rose left Toledo and since leaving Toledo has experienced, with the exception of a brief phone call initiated by plaintiff, no contact with plaintiff. After Rose's move to Denver, plaintiff remained in her managerial position for over two months, finally leaving in frustration with a lack of supervision, inadequate guidance, and general office disarray. Taken as a whole, it cannot be said that the alleged isolated incidents of harassment created "intolerable" working conditions that caused plaintiff to leave her position.

### Intentional Infliction of Emotional Distress

Finally, plaintiff alleges an intentional act by Rose—guiding plaintiff's head toward his lap while plaintiff reached under the car seat for breath mints—caused severe emotional distress which manifested itself in migraine headaches, eye twitching, and vomiting. In order to recover on a claim for intentional infliction of emotional distress, plaintiff must prove that:

(1) the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) the actor's conduct was so extreme as to go beyond all possible bounds of decency and was such that it can be considered utterly intolerable in a civilized community; (3) the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it.

*Tschantz v. Ferguson,* 97 Ohio App.3d 693, 702, 647 N.E.2d 507 (1994); *Koenig v. City of Dayton,* 28 Ohio App.3d 70, 74, 502 N.E.2d 233 (1985); *Pyle v. Pyle,* 11 Ohio App.3d 31, 34, 463 N.E.2d 98 (1983). In this case, plaintiff cannot prove the fourth element—serious mental anguish. Although the emotional distress alleged does not have to "manifest itself in the form of some physical injury," *Yeager v. Local Union 20, Etc.,* 6 Ohio St.3d 369, 374, 453 N.E.2d 666 (1983), it must be "serious." The Ohio Supreme Court described "serious emotional distress" as "emotional injury which is both severe and debilitating . . . [it is] found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks,* 6 Ohio St.3d 72, 78, 451 N.E.2d 759 (1983). *See also Koenig,* 28 Ohio App.3d at 73, 502 N.E.2d 233; *Plikerd v. Mongeluzzo,* 73 Ohio App.3d 115, 126, 596 N.E.2d 601 (1992).

Plaintiff's injury, I conclude, cannot be considered "serious" under the standards set forth by the Ohio Supreme Court. The record does not demonstrate that plaintiff's emotional injury was "debilitating." Plaintiff continued in her position as Toledo Territory Manager after the alleged incidents and did so with great success. In fact, after less than two months on the job, plaintiff reached the maximum commission possible under her employment contract and received a letter

---

intolerance that forced plaintiff to quit, and quitting due to a violation of public policy—sexual harassment—provides an exception to employment at will. Thus, sexual harassment is a necessary precondition to the wrongful discharge claim. Without a finding of sexual harassment, plaintiff's discharge was not wrongful, but rather a voluntary resignation which does not offend the employment at will doctrine. Having rejected plaintiff's sexual harassment claim under the hostile work environment theory, the quid pro quo theory, and the common law of Ohio, plaintiff, on that ground alone, cannot subsequently maintain her wrongful discharge claim.

from ANR's Vice President of Marketing and Sales congratulating her on this outstanding achievement. Additionally, plaintiff, in helping her terminal meet its monthly budget objectives, received an incentive bonus and congratulatory letter from ANR's Chief Operating Officer.

After the alleged incidents of harassment, plaintiff did not seek counseling, medical attention, or professional support for an emotional injury. Rather, she went to work in Toledo, conducted herself in a professional manner, and performed remarkably well by all accounts. Any job-related struggles stemmed more from inadequate supervision and general office disarray. In sum, no reasonable trier of fact could conclude that the facts on record support a finding that plaintiff was "unable to adequately cope" with a "debilitating" emotional injury. Therefore, summary judgment on the claim of intentional infliction of emotional distress shall be granted.

For the foregoing reasons, it is

**ORDERED THAT** defendants' motion for summary judgment on all counts be, and same hereby is, granted.

**So ordered.**