WORRELL, Admr., et al., Appellants,

v.

DANIEL et al., Appellees.

[Cite as *Worrell v. Daniel* (1997), 120 Ohio App.3d 543.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE10–1301.

Decided June 24, 1997.

*Stewart E. Roberts*, for appellants.

*George C. Luther*, for appellees Robert Lewis Daniel, and Janice and David Steiniger.

*Lane, Alton & Horst, Rick E. Marsh* and *Elizabeth Ilgen*, for appellees Robert Charles Sheets, Elsie Sheets, and Jennifer Patrick.

*Mark P. Ort*, for appellee Jennifer Patrick.

*Price & Jones* and *James Fields, Jr.*, for appellee Sonya Hawkins.

*Michael J. Holbrook*, for appellee Laverta Carroll.

*Keener, Doucher, Curley & Patterson* and *W. Charles Curley*, for intervenor-appellee.

BOWMAN, Judge.

In the early morning hours of September 25, 1994, appellee Jennifer Patrick drove with appellee Robert Charles Sheets ("Bobby") and appellee Robert Lewis Daniel to the home of appellant Karen M. Worrell to pick up Karen's daughter,

Abby Worrell, and her friend, Jamie Kelly. Abby and Jamie were sneaking out of the Worrell residence without Karen's knowledge. While Jennifer, Bobby, and Robert waited for Abby and Jamie, Bobby showed Jennifer a gun that he was carrying concealed near his waist. Although the gun frightened Jennifer, she did not tell anyone that Bobby had it.

After Abby and Jamie entered the car, the five youths returned to the residence of appellee Elsie Sheets, where Bobby, Elsie's son, Jennifer, Elsie's niece, and Zonna Harrington, Jennifer's mother, lived. Appellee Sonya Hawkins was in the living room when the group arrived and she, Bobby, Robert, Abby, and Jamie decided to go to a nearby graveyard. Jennifer went to bed because she had to go to work the next day and told the group to wake her up if Abby and Jamie needed a ride home.

As Bobby, Robert, Sonya, Abby, and Jamie walked back to the Sheets residence from the graveyard, Robert said to Bobby, "Let's kill them," referring to Abby and Jamie. Although Bobby knew that Robert was trying to get to the next level of his gang, which required Robert to kill someone, Bobby did not take Robert's comment seriously; however, he also did nothing to deter Robert from following through on his idea. Shortly thereafter, while on the Sheets property, Robert grabbed Bobby's concealed, loaded gun and shot Abby and Jamie. Bobby did nothing to try to stop Robert from killing the girls, nor did he seek medical attention for them. Jamie died instantly, but Abby did not.

After the shooting, Bobby, Robert, and Sonya put Abby in the trunk of Bobby's car and moved her from the Sheets property to a deserted barn. As Robert came back to the car after dumping Abby in the barn, he was wiping blood off a knife and stated that he and Sonya had stabbed Abby. The trio then returned to the Sheets property, loaded Jamie's body in the trunk, and took her to the same barn. When Jamie's body was dumped, Abby was still moaning, so Robert threw a concrete block on her head to kill her.

Upon returning to the Sheets residence, Bobby told Elsie about the murders. Instead of calling the police or the rescue squad, Elsie washed Bobby's, Robert's, and Sonya's bloody clothes. Elsie, Bobby, Robert, and Sonya then conspired to cover up the murders.

The following Monday, Bobby was aware that Abby and Jamie had been reported as missing, and, when police contacted him for information, Bobby lied and told them he knew nothing. Approximately one week later, Bobby knew that the police were close to discovering the murders. It was then that Robert came up with the idea of burning Abby's and Jamie's bodies in the barn, and Elsie and Bobby acquiesced in the idea. In fact, Elsie drove Bobby and Sonya to the barn and purchased the gasoline used to set the barn, including the bodies of Abby and Jamie, on fire.

On March 2, 1995, Karen, in her capacity as Abby's mother, and in her capacity as administrator of Abby's estate, filed a complaint against appellees and others, alleging assault, wrongful death, complicity to commit physical harm, gross negligence, abduction and kidnapping, wrongful conversion, damage to property, outrage, intentional infliction of emotional distress, loss of society and companionship, economic loss, and parental liability, and seeking compensatory and punitive damages, as well as attorney fees and costs.

On June 22, 1995, appellee Motorists Mutual Insurance Company ("Motorists") filed a motion to intervene in the action because it had written the homeowner's insurance policy, No. HO71.560619–60, for Elsie that was in effect when Abby and Jamie were killed. In its motion, Motorists stated that it was believed by some of the parties that the homeowner's insurance policy provided liability coverage for the allegations made against Elsie and Bobby, as well as some of the other appellees. Motorists also stated that it did "not believe that its policy provides coverage for any of the allegations made in this action, but has recently agreed to defend its insureds in this case subject to 'reservation of rights' letters disclaiming liability coverage under the applicable policy." Motorists' motion was granted on July 13, 1995.

On February 7, 1996, Motorists filed a motion to intervene in the action for all purposes, including, but not limited to, making arguments on behalf of its insureds, Elsie, Bobby, Jennifer, and Zonna, to secure dismissal of all negligence claims against them. In its motion, Motorists stated:

"Upon receiving notification of this lawsuit, Motorists agreed to provide a defense to its insureds. That action was accompanied by 'reservation of rights' letters disclaiming liability coverage under the applicable homeowner's policy. Motorists has continued to provide a defense for its insured through the pendency of the litigation by paying attorney * * * to defend Elsie Sheets, Robert Sheets, Patrick and Harrington.

" * * *

"In the ensuing months, it has become apparent to Motorists and its counsel that there may be certain defenses available to its insureds on the merits of the case that, for ethical reasons, cannot be raised by the attorney hired to represent them. * * * If those defendants successfully defend against allegations of negligence, however, it is likely that they will be left without insurance coverage for any judgment against them for intentional misconduct. Clearly, the defense attorney hired by Motorists to defend its insureds owes his allegiance to the defendants themselves and not to the insurance company. The obligation of that attorney is to try to bring Plaintiff's [sic] claims within the coverage provided by the policy. Accordingly, [the defense attorney] cannot ethically raise any defense that, if successful, would effectively exclude insurance coverage for his clients. In

that event, however, the insurer, whose rights and obligations may also be determined by the outcome of the underlying action, is unrepresented and unprotected.

" * * *

"The remedy available to the insurer in this quandry [*sic*] is intervention for all purposes under Civ.R. 24 * * *."

Motorists' motion was granted on March 4, 1996.

On March 11, 1996, appellants voluntarily dismissed, with prejudice, their claims against Jennifer and Zonna, except for the claim against Jennifer asserting gross negligence for transporting Abby to the Sheets residence and for failing to tell Abby that she was in danger because Bobby had a gun. Jennifer filed a motion for summary judgment on the remaining claim, but the motion was denied on April 8, 1996.

On March 21, 1996, Motorists filed a motion for summary judgment on the insurance coverage issues. Motorists asserted that it had no duty to defend or indemnify its insureds, Elsie, Bobby, Jennifer, and Zonna, because the conduct leading to Abby's death did not constitute an occurrence, defined in the policy as an accident. In addition, Motorists asserted that the "expected or intended" exclusion in the policy barred coverage, especially since Elsie's and Bobby's convictions for murder in connection with Abby's death conclusively established the intentional nature of their acts.

On April 30, 1996, appellants filed a motion for partial summary judgment against Elsie and Bobby on the issues of wrongful conversion of property, damage of property, tort of outrage, intentional infliction of emotional distress, and statutory parental liability. This motion for summary judgment was granted by the trial court on August 30, 1996.

On July 3, 1996, the trial court denied Motorists' motion for summary judgment, finding that Motorists had a duty to defend or indemnify its insureds in the lawsuit. The decision was based on the holdings of *Kish v. Cent. Natl. Ins. Group* (1981), 67 Ohio St.2d 41, 21 O.O.3d 26, 424 N.E.2d 288; and *Pennington v. Ohio Cas. Ins. Co.* (1989), 63 Ohio App.3d 527, 579 N.E.2d 507. A decision identical to the one entered on July 3, 1996, was also filed on July 8, 1996.

On July 15, 1996, Motorists filed a motion for reconsideration of the trial court's July 3 and 8, 1996 decisions. Motorists' motion was based on two recently decided Ohio Supreme Court cases: *Gearing v. Nationwide Ins. Co.* (1996), 76 Ohio St.3d 34, 665 N.E.2d 1115; and *Cuervo v. Cincinnati Ins. Co.* (1996), 76 Ohio St.3d 41, 665 N.E.2d 1121.

On August 29, 1996, the trial court granted Motorists' motion for reconsideration, finding that the cases of *Gearing* and *Cuervo* were controlling. The court stated that, since the shooting that led to Abby's death was not an accident, there was no insurance coverage available for Elsie and Bobby, even if they were guilty only of negligence, since their liability only arose after the intentional act of Robert's shooting Abby.

On September 13, 1996, the trial court filed a judgment entry finding that Elsie, Bobby, and Jennifer were insureds under Elsie's Motorists homeowner's insurance policy and that, under the policy, there was no coverage for any insured for any of the allegations made against them by appellants in the lawsuit because there was no "occurrence" that gave rise to insurance coverage. In addition, the trial court stated that Motorists "is under no obligation to provide a defense to its insureds for the allegations made against them in this lawsuit, nor is Motorists * * * under any obligation to indemnify its insureds if there is a judgment entered against them in this case." The trial court then entered final judgment in favor of Motorists and against appellants, Elsie, Bobby, and Jennifer, and found that there was "no just reason for delay" and that this was a judgment that could be appealed immediately.

Appellants now bring this appeal, asserting the following assignments of error:

"I. The Trial Court committed prejudicial error in sustaining the Motion for Summary Judgment filed by Intervenor–Appellee Motorists Mutual pursuant to Rule 56, Ohio Rules of Civil Procedure, in that from the evidence properly before the Court pursuant to Rule 56(C), the Plaintiffs–Appellants being entitled to have such evidence construed most strongly in her favor, genuine issue exists as to material facts, and it could not be determined that Motorists is entitled to judgment as a matter of law.

"II. The Trial Court committed prejudicial error in sustaining the Motion for Summary Judgment filed by Intervenor–Appellee Motorists Mutual pursuant to Rule 56, Ohio Rules of Civil Procedure, by incorrectly holding that the law of Ohio requires that the homeowner's insurance policy issued by Motorists in this case does not provide liability coverage for the negligence of the insureds, when the injuries and damages experienced by Plaintiffs–Appellants were caused by the act of an invited guest.

"III. The Trial Court committed prejudicial error in entertaining and sustaining Intervenor–Appellee's Motion for Reconsideration, in that the Ohio Rules of Civil Procedure do not allow for any 'motion for reconsideration.' What the Rules do provide for is a motion for relief from judgment, under Rule 60(B). Plaintiffs–Appellants argue that Intervenor Motorists made no effort to comply with the requirements of Civil Rule 60(B).

"IV.   The Trial Court committed prejudicial error by allowing Intervenor–Appellee Motorists Mutual to participate in the procedural business of the Trial Court, with respect to discovery and scheduling, after having sustained its Motion for Summary Judgement, thereby granting to Intervenor–Appellee all of the relief which it had sought in its Intervening Complaint for Declaratory Judgment."

■   Appellants' first two assignments of error are related and will be addressed together.   In these assignments of error, appellants assert that the trial court erred in granting summary judgment in favor of Motorists.

Pursuant to Civ.R. 56, summary judgment is proper if there are no genuine issues of fact and the moving party is entitled to judgment as a matter of law.   It is a procedural device designed to terminate litigation at an early stage where a resolution of factual disputes is unnecessary.   However, it must be awarded with caution, resolving all doubts and construing the evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion.   See *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.   A motion for summary judgment is only appropriate where, after construing the evidence most strongly in favor of the party opposing the motion, reasonable minds could only conclude that the movant is entitled to judgment.   *Whiteleather v. Yosowitz* (1983), 10 Ohio App.3d 272, 10 OBR 386, 461 N.E.2d 1331.

The critical question in determining whether granting summary judgment was proper in this case is whether the events revolving around Abby's death fall within the liability coverage provided by the Motorists homeowner's insurance policy.   The policy provides:

"**DEFINITIONS**

" * * *

"5.   '**occurrence**' means an accident, including exposure to conditions, which results, during the policy period, in:

"a.   **bodily injury**; or

"b.   **property damage.**

" * * *

"**SECTION II   —LIABILITY COVERAGES**

"**COVERAGE E—Personal Liability**

"If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

"1.  pay up to the limit of liability for the damages for which the **insured** is legally liable; and

"2.  provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to settle or defend ends when the amount we pay for damages resulting from the **occurrence** equals our limit of liability."

It should be noted at the outset that Motorists concedes that Abby suffered bodily injury and died as a result of conduct on the part of its insureds that is legally actionable as negligence;  however, Motorists asserts that it is not liable to appellants because the injury that precipitated this claim, Abby's death, was an intentional act that was outside the policy's coverage.  We agree.

In *Gearing,* 76 Ohio St.3d at 36, 665 N.E.2d at 1117, the court stated that "[i]t is axiomatic that an insurance company is under no obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within the coverage of the policy."  In *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118, the court held that an insurance company has no duty to defend or indemnify its insured where the act of the insured was intentional and, therefore, outside the policy coverage.

In *Rothman v. Metro. Cas. Ins. Co.* (1938), 134 Ohio St. 241, 12 O.O. 50, 16 N.E.2d 417, the court stated that the will of the person who causes the injury determines whether an injury is accidental within the provisions of an insurance policy.  The court also stated that an injury or death does not occur by accident when it results from willful, intentional, personal violence.

In *Farmers Alliance Mut. Ins. Co. v. Salazar* (C.A.10, 1996), 77 F.3d 1291, Salazar and her son, Manuel, lived in a home covered by a homeowner's insurance policy with Farmers.  Manuel was known for carrying guns and owned a revolver, which he kept in his home and sometimes fired in the backyard.  Salazar knew that her son had the revolver and often carried it on his person, yet she never tried to take it away from him.  Salazar, in front of Manuel, gave her younger son, Hector, an automatic pistol.  The next day, while in his home, Manuel took the pistol away from Hector and gave his revolver to his friend, Jacob.

Two days later, Manuel had the pistol and Jacob had the revolver when they went out with some friends.  After engaging some other youths in a dispute, Manuel and Jacob fired their guns.  A boy, Thomas, was killed by a bullet from

the revolver. Both Manuel and Jacob were convicted of first-degree murder. Farmers stipulated that Salazar was negligent in her supervision of Manuel in permitting him to possess the revolver and the pistol, and that Manuel was negligent in giving the revolver to Jacob.

In determining whether the Farmers policy provided coverage for Thomas's death, the court stated that, when determining whether something constitutes an occurrence under the insurance policy, the focus should be on the injury and its immediately attendant causative circumstances. In the case before it, the court stated that the occurrence happened when and where Jacob murdered Thomas. In addition, in determining which acts or omissions constituted the occurrence, the court must focus on the murder itself, even though a number of other events of an earlier time and different place may have contributed to the injury. The court, in noting that intentional murder is not an accident, held that the murder in this case was not an occurrence under the Farmers insurance policy that would trigger coverage. As a result, Farmers had no duty to defend or indemnify Salazar and Manuel.

■ This court finds that the analysis in *Farmers Alliance* is applicable to the case at bar. Based on *Farmers Alliance,* the occurrence giving rise to appellant's claim in this case happened when Robert shot Abby. This act was an intentional one and, thus, does not constitute an occurrence under the Motorists policy. Robert's act was further aggravated by the intentional acts of Bobby and Sonya moving Abby's body to the barn, instead of summoning medical assistance for her; the intentional acts of Bobby, Robert, Sonya, and Elsie concealing the crime; and the intentional acts of Bobby, Sonya, and Elsie in burning the barn. Even if this court were to consider each of these separate acts an "occurrence," since each act exacerbated the original crime, none of the "occurrences" would trigger insurance coverage under the insurance policy because each was an intentional act on its own and, thus, outside the policy coverage.

This court is cognizant of the fact that Robert, who committed the shooting and who ultimately killed Abby by striking her with a brick, is not an insured under the Motorists policy; however, the damages for which appellants seek compensation flow from this intentional act and, thus, any claims against the Motorists insureds are precluded as well. *Cuervo.* Accordingly, the trial court did not err in granting summary judgment, as a matter of law, in favor of Motorists. This court notes that it can conceive of no circumstance where an insurance company would envision that it would be liable for liability coverage for an act such as occurred in this case. To hold an insurance company liable under these facts would fly in the face of public policy. Appellants' first and second assignments of error are not well taken.

■ In their third assignment of error, appellants contend that the trial court erred in entertaining and sustaining Motorists' motion for reconsideration. Appellants assert that the Rules of Civil Procedure do not provide for a motion for reconsideration and that Motorists should have filed a motion for relief from judgment instead.

While appellants are correct that the Rules for Civil Procedure do not provide for a motion for reconsideration after judgment, this was not the case here. In *Bodo v. Nationwide Ins. Co.* (1991), 75 Ohio App.3d 499, 599 N.E.2d 844, the court found that filing a motion for reconsideration was appropriate where a court had entered a decision but had not yet put on a final entry of judgment. The court cited *Pitts v. Dept. of Transp.* (1981), 67 Ohio St.2d 378, 379–380, 21 O.O.3d 238, 239, 423 N.E.2d 1105, 1106, fn.·1, which states:

"Interlocutory orders are subject to motions for reconsideration, whereas judgments and final orders are not. This court is specifically denying motions for reconsideration in the trial court only after final judgments.

"Civ.R. 54(B) allows for a reconsideration or rehearing of interlocutory orders. The rule, when discussing interlocutory orders, states * * * that they are 'subject to revision at any time before the entry of judgment adjudicating the claims and the rights and liabilities of all the parties.' Therefore, a motion for reconsideration would be the proper procedural vehicle for obtaining relief after interlocutory orders."

In *Maxey v. Lenigar* (1984), 14 Ohio App.3d 458, 14 OBR 578, 471 N.E.2d 1388, this court found that a decision granting or denying summary judgment is interlocutory in nature and is subject to revision to correct an error at any time prior to the entering of a final judgment in this case.

In this case, the trial court rendered a decision denying summary judgment to Motorists on July 3, 1996; however, the trial court never put on a judgment entry memorializing its decision. Motorists filed its motion for reconsideration on July 15, 1996, following the Ohio Supreme Court's decisions in *Gearing* and *Cuervo*, rendered on July 3, 1996. Thus, at the time Motorists filed its motion for reconsideration, the decision rendered by the trial court was interlocutory in nature and was subject to revision. Accordingly, the trial court did not err in entertaining Motorists' motion for reconsideration. Such a motion was proper and appropriate in this situation. Appellants' third assignment of error is not well taken.

■ In their fourth assignment of error, appellants assert that the trial court erred in permitting Motorists to participate in the discovery and scheduling process even after its motion for summary judgment was granted. Specifically, appellants assert that they were prejudiced because the trial court granted

Motorists' request for a six-month continuance and permitted it to schedule the deposition of Robert, even though Motorists was technically not a party to the case any longer, since it had been granted judgment in its favor on all its claims. Appellants assert that, regardless of the outcome of the insurance issue, they still have a right to pursue their causes of action against appellees.

The record reveals that, on September 3, 1996, the trial court put on an entry continuing the trial date until March 10, 1997. In its entry, the trial court specifically stated that "[t]his continuance is necessary to allow time for an appeal of the coverage issues addressed in the Court's Decision dated and filed August 29, 1996. The final determination of said coverage issues shall effect the parties and issues at trial."

This court finds that it was within the sound discretion of the trial court to continue the case in order that the insurance coverage issue could be resolved. The issue regarding the insurance coverage affects a number of parties and could affect the manner in which the case is tried. Thus, it was in the interest of sound judicial administration that the trial court made this decision, and this court cannot find that it abused its discretion in so deciding. See *Wisintainer v. Elcen Power Strut Co.* (1993), 67 Ohio St.3d 352, 617 N.E.2d 1136.

This court also cannot find that the decision to continue the trial prejudiced appellants since, depending on the outcome of this appeal, they might have conserved resources and avoided having two trials. In addition, while this court might have made a different decision regarding scheduling Robert's deposition, permitting discovery to continue while the insurance issue was appealed does not constitute an abuse of discretion. Appellants' fourth assignment of error is not well taken.

Based on the foregoing, appellants' four assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

TYACK, P.J., and DESHLER, J., concur.