OPINION
On February 2, 1999, Monica and Randall Okey filed a complaint in the Franklin County Court of Common Pleas against Worthington Schools AKA Worthington School District ("Worthington") and Worthington Kilbourne High School.[1] The complaint arose out of Ms. Okey's slip and fall at Worthington Kilbourne High School. The Okeys set forth claims for negligence and loss of consortium.
On September 20, 1999, Community Insurance Company ("CIC") filed a motion to intervene as a defendant and to file a cross-claim and a counterclaim. Ms. Okey was an employee of the city of Columbus at the time of her fall, and CIC was the claims administrator for the City of Columbus Non-Uniformed City Employees' Benefit Program ("benefit program"). Pursuant to such benefit program, CIC paid to or on behalf of Ms. Okey $1,459.60 for medical/hospital expenses arising out of the fall. CIC contended it had a right to intervene in order to assert subrogation and reimbursement claims against Worthington and Ms. Okey, respectively.
On September 24, 1999, the trial court filed an entry granting CIC's motion to intervene and to file the cross-claim and counterclaim. On September 28, 1999, the Okeys filed a memorandum contra CIC's motion to intervene. On November 3, 1999, the Okeys filed a "MOTION TO VACATE/60(B) RELIEF," requesting the trial court vacate the granting of CIC's motion to intervene and to file the cross-claim and counterclaim. The Okeys contended that under R.C. 2744.05(B), CIC was not entitled to bring a subrogation action against a political subdivision and, therefore, should not have been permitted to intervene in the action. The Okeys referred the trial court to their memorandum contra CIC's motion to intervene for their full argument.
On November 16, 1999, Worthington filed a motion "TO VACATE/60(B)," requesting the trial court vacate the entry granting CIC's motion to intervene. In support of its argument, Worthington referred the trial court to the Okeys' motion to vacate and their September 28, 1999 memorandum contra.
On January 7, 2000, the trial court journalized a decision and entry vacating its prior order granting CIC's motion to intervene. CIC filed a notice of appeal on February 4, 2000. On February 7, 2000, an entry was journalized, indicating that the Okeys and Worthington had achieved a settlement. Therefore, the trial court dismissed the action with prejudice.
In its appeal to this court, CIC (hereinafter "appellant") asserts the following errors for our consideration:
ASSIGNMENT OF ERROR NO. 1:
 THE TRIAL COURT ERRED IN VACATING ITS PRIOR ORDER GRANTING INTERVENTION AS THE COMMON PLEAS COURT WAS WITHOUT JURISDICTION TO CONSIDER THE MOTION TO VACATE/60(B) RELIEF.
ASSIGNMENT OF ERROR NO. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF COMMUNITY INSURANCE CO.'S (sic) AND ABUSED ITS DISCRETION WHEN IT GRANTED PLAINTIFF-APPELLEES (sic) AND DEFENDANT-APPELLEE'S MOTION FOR RELIEF FROM JUDGMENT WHERE THE MOVANT FAILED TO SATISFY THE REQUIREMENTS CONTAINED IN CIVIL RULE 60(B).
ASSIGNMENT OF ERROR NO. 3:
 THE TRIAL COURT ERRED AS COMMUNITY INSURANCE CO. HAD A RIGHT TO INTERVENE.
In its first assignment of error, appellant contends the trial court had no jurisdiction to grant Civ.R. 60(B) relief. Appellant asserts that the motions for Civ.R. 60(B) relief from judgment filed by the Okeys and Worthington (hereinafter collectively referred to as "appellees") were not technically Civ.R. 60(B) motions but were, instead, motions for reconsideration. Appellant contends motions for reconsideration are not recognized under the Ohio Rules of Civil Procedure ("Civil Rules") and that the trial court erred in granting relief based on such.
Appellant is correct inasmuch as appellees' motions for Civ.R. 60(B) relief were improperly labeled. A Civ.R. 60(B) motion is not proper when it seeks relief from a judgment that is not final. See Jarrett v. Dayton Osteopathic Hosp., Inc. (1985),20 Ohio St.3d 77, 78. Indeed, such "judgments" or orders are subject to modification. Id. See, also, Matrka v. Stephens
(1991), 77 Ohio App.3d 518, 520 (a party may seek Civ.R. 60[B] relief only from a final judgment).
In the context of the case at bar, there was no final order from which appellees sought relief. While the denial of a motion to intervene is a final, appealable order, the granting of such a motion is not a final order. See Fairview Gen. Hosp. v.Fletcher (1990), 69 Ohio App.3d 827, 830; Wilson v. Maurer (Jan. 21, 1992), Franklin App. No. 91AP-1242, unreported at 3. Hence, appellees could not properly obtain Civ.R. 60(B) relief from the trial court's initial grant of appellant's motion to intervene, as such was not a final order.
However, this does not mean the trial court had no jurisdiction to entertain appellees' motions, despite the faulty designations given such motions. Appellant is correct that such motions would have been more properly labeled motions for reconsideration. However, appellant incorrectly asserts that the Civil Rules do not recognize such motions. Rather, the Civil Rules do not prescribe motions for reconsideration filed after a final judgment. Pitts v. Dept. of Transportation (1981),67 Ohio St.2d 378, paragraph one of the syllabus; Worrell v. Daniel
(1997), 120 Ohio App.3d 543, 552. Interlocutory orders are subject to motions for reconsideration. Pitts at 379, fn. 1.
As indicated above, the granting of appellant's motion to intervene was not a final order but an interlocutory order that was subject to modification prior to final judgment. Therefore, the trial court did not err in entertaining and ruling on appellees' motions which, in essence, requested the trial court reconsider its earlier decision allowing appellant to intervene.
Accordingly, appellant's first assignment of error is overruled.
Appellant's second and third assignments of error are interrelated and, therefore, will be addressed together. Appellant's arguments are based on an analysis of the trial court's decision under the standards for granting Civ.R. 60(B) relief. As discussed above, however, appellees' motions, although titled motions to vacate and for 60(B) relief, were actually motions for reconsideration. The trial court granted appellees' motions and denied appellant's request to intervene. Hence, the proper review of the trial court's decision is not under standards for granting Civ.R. 60(B) relief but standards for granting applications to intervene as set forth in Civ.R. 24.
In order to prevail on an application to intervene, the following requirements must be met: (1) the application must be timely, which is a matter within the discretion of the trial court; (2) the applicant must claim an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) the existing parties do not adequately represent the applicant's interest. Blackburn v.Hamoudi (1986), 29 Ohio App.3d 350, 352. The interest claimed by the applicant must be a legally protectable interest. Fairview,supra at 833.
Here, appellees asserted appellant could not intervene because appellant had no legal right to file a subrogation action against Worthington, a political subdivision, pursuant to R.C.2744.05(B). Appellant contends that under R.C. 2744.05(B), the monies it paid to or on behalf of Ms. Okey were not "benefits" as such word is used in the statute and, therefore, R.C. 2744.05(B) does not prohibit it from filing a subrogation action against Worthington. In addition, appellant contends appellees and the trial court failed to address its application to intervene so as to file a counterclaim against Ms. Okey for reimbursement. For the reasons that follow, we find the trial court did not err in denying appellant's application to intervene.
We first address appellant's contention regarding its right to intervene in order to file a subrogation claim against Worthington. The slip and fall occurred on September 9, 1997. Therefore, the following version of R.C. 2744.05 was in effect and stated:
 * * * in an action against a political subdivision to recover damages for injury * * *
* * *
 (B) If a claimant receives or is entitled to receive benefits for injuries or loss * * * from a policy or policies of insurance or any other source, the benefits shall be disclosed to the court, and the amount of the benefits shall be deducted from any award against a political subdivision recovered by that claimant. No insurer or other person is entitled to bring an action under a subrogation provision in an insurance or other contract against a political subdivision with respect to such benefits. * * * [Emphasis added.]
Appellant contends that the above emphasized language does not preclude it from bringing a subrogation action against Worthington. Appellant's assertion is based upon the Supreme Court case Strief v. Cincinnati (1995), 72 Ohio St.3d 318. InStrief, the injured party was awarded $14,300 from a political subdivision. The political subdivision moved for disclosure and deduction of all collateral benefits received by the injured party as a result of the injury. The injured party disclosed that she had received $1,395.39 from her union benefit plan but that under such plan, she was required to reimburse the plan from any recovery she received against a third party. Accordingly, the injured party asserted the money she received from the plan was not a collateral benefit. The political subdivision argued it was entitled to set off such amount from the award against it.
The Supreme Court stated that the issue was whether the word "benefit" as used in R.C. 2744.05(B) included monies advanced to an injured party by a union benefit plan that must be reimbursed from a subsequent judgment pursuant to a subrogation agreement between the injured party and the plan. Id. at 318-319. The Supreme Court held that the injured party's receipt of the $1,395.39 from her union benefit fund was not a "benefit" to be set off pursuant to R.C. 2744.05(B) but was in the nature of a "conditional loan." Id. at 320. The Supreme Court based this holding on the fact that the benefit plan was entitled to be reimbursed the full amount paid to the injured party. The Supreme Court stated that if the injured party were required to repay the benefit plan and also have the amount deducted from the award against the political subdivision, the injured party would be paying that portion of her medical and disability costs/benefits twice, and the injured party would be prevented from fully recovering for an injury. Id. at 319-320.
Appellant asserts that in the case at bar, as in Strief, Ms. Okey is required under her benefit program to reimburse appellant in the amount of those benefits previously provided by appellant when Ms. Okey recovers such amounts from the tortfeasor. Appellant contends that under Strief, the monies appellant "advanced" to Ms. Okey were not "benefits" under former R.C.2744.05(B) but were more akin to "conditional loans." Therefore, appellant argues R.C. 2744.05(B)'s prohibition against an insurer bringing a subrogation action does not apply here because such prohibition applies only to "benefits" as such term is used in former R.C. 2744.05(B). Again, it is appellant's contention that if the money it paid to Ms. Okey is not considered a "benefit" under the analysis set forth in Strief, then former R.C.2744.05(B) does not apply, and appellant is free to file a subrogation claim against Worthington.
Appellant's contentions have initial appeal in light of the language used by the Supreme Court in Strief. However, this court does not believe the same analysis set forth in Strief
applies to the situation faced in the case at bar. First, Strief
did not address the same issue presented herein. Strief involved an action between the injured party and the political subdivision/tortfeasor and the ability of such political subdivision to set off amounts received by the injured party from her benefit plan. In addressing the issue involved therein, the Supreme Court cited only the first sentence of former R.C.2744.05(B) involving the political subdivision's right of set off. Here, the issue is whether the claims administrator of the benefit plan (i.e., the insurer) may bring a subrogation action against the political subdivision/alleged tortfeasor. This issue involves the second sentence of former R.C. 2744.05(B) — the prohibition of subrogation claims by insurers against political subdivisions which was not addressed in Strief.
We acknowledge that the second sentence of former R.C.2744.05(B) does use the words "such benefits," clearly referring to the benefits addressed in the first sentence which must be deducted from an award against a political subdivision. We also note that the Supreme Court in Strief stated that monies required to be reimbursed were not "benefits" as used in the first sentence of former R.C. 2744.05(B). However, in so stating, we believe the Supreme Court did not contemplate that insurers could then bypass R.C. 2744.05(B)'s prohibition of subrogation claims against political subdivisions. The practical reality is that most insurance contracts require that the insurer be reimbursed to the extent the insured recovers against a tortfeasor for those amounts previously paid to the insured by the insurer. In decidingStrief, the Supreme Court was not stating that insurers could now file subrogation claims against political subdivisions merely because the insurance contract requires reimbursement.
Rather, we believe that if Strief is to be applied at all to the situation in the case at bar, the conclusion would be as follows. If an injured party recovers against a political subdivision/tortfeasor and, pursuant to Strief, no amount is deducted from such award because the injured party is required to reimburse the insurer, the insurer must pursue its insured for such amount under the reimbursement provision of the insurance contract and is prohibited under R.C. 2744.05(B) from bringing a subrogation action against the political subdivision.
This is in keeping with the purposes behind former R.C.2744.05(B), which include the conservation of the fiscal resources of political subdivisions. See Menefee v. Queen City Metro
(1990), 49 Ohio St.3d 27, 29. Indeed, the state has a valid interest in preserving the financial soundness of its political subdivisions and can make the rational determination to permit recovery by an unprotected victim but deny subrogation to insurance carriers. Id.
Our conclusion above should relieve any confusion arising out of Strief in cases falling under former R.C.2744.05(B). We note that in claims arising after September 29, 1997 which involve insurers' subrogation claims against political subdivisions, amended R.C. 2744.05(B) (effective September 29, 1997) now states:
 (B)(1) If a claimant receives or is entitled to receive benefits for injuries or loss allegedly incurred from a policy or policies of insurance or any other source, the benefits shall be disclosed to the court, and the amount of the benefits shall be deducted from any award against a political subdivision recovered by that claimant. No insurer or other person is entitled to bring an action under a subrogation provision in an insurance or other contract against a political subdivision with respect to those benefits. The amount of the benefits shall be deducted from an award against a political subdivision under division [B][1] of this section regardless of whether the claimant may be under an obligation to pay back the benefits upon recovery, in whole or in part, for the claim. A claimant whose benefits have been deducted from an award under division [B][1] of this section is not considered fully compensated and shall not be required to reimburse a subrogated claim for benefits deducted from an award pursuant to division [B][1] of this section. [Emphasis added.]
Based on all of the above, we reject appellant's argument that under Strief, former R.C. 2744.05(B) does not apply. Appellant had no right to file a subrogation claim against Worthington. Therefore, as to appellant's application to intervene in order to file a cross-claim against Worthington for subrogation, appellant failed to meet at least one requirement under Civ.R. 24 — that it have a legally protectable interest relating to the property or transaction that is the subject of the action. Blackburn, supra at 352; Fairview, supra at 833. Accordingly, to this extent, the trial court did not err in denying appellant's application to intervene.
We now address appellant's application to intervene in order to file a counterclaim against Ms. Okey for reimbursement. Ms. Okey's benefit program does contain a subrogation and reimbursement provision whereby Ms. Okey would be obligated, upon settlement with the liable party, to reimburse the plan for amounts previously provided to Ms. Okey by the plan. The trial court did not address appellant's application to intervene in this context. However, as a practical matter, there is no longer a pending case in which appellant could intervene. As indicated above, Ms. Okey and Worthington settled the matters between them, and the case was dismissed with prejudice.
Further, even if there were a pending case, appellant's application to intervene would have been properly denied. In order to intervene, the applicant must show that he or she is so situated that disposition of the action may as a practical matter impair or impede the applicant's ability to protect his or her interest. Blackburn at 352. Appellant has the ability to file its own, separate suit against its insured based on the reimbursement provision in the benefit program. Hence, appellant has not shown it is so situated such that disposition of the action between appellees could, as a practical matter, impair or impede its ability to protect any reimbursement claim it may have against Ms. Okey. Therefore, denial of appellant's application to intervene in this context was not erroneous.
For the reasons stated above, the trial court did not err in denying appellant's application to intervene as a whole. Accordingly, appellant's second and third assignments of error are overruled.
Having overruled each of appellant's assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
DESHLER and LAZARUS, JJ., concur.
[1] Worthington Kilbourne High School was subsequently dismissed.