McCAFFERTY, Appellant,

v.

CLEVELAND BOARD OF EDUCATION, Appellee.

[Cite as *McCafferty v. Cleveland Bd. of Edn.* (1999), 133 Ohio App.3d 692.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 74237.

Decided June 7, 1999.

**694**

*Denise J. Knecht & Assoc. Co., L.P.A., Denise J. Necht* and *Smaragda Karakoudas,* for appellant.

*Johnson & Angelo, Michael J. Angelo* and *Gina A. Kuhlman,* for appellee.

James D. Sweeney, Judge.

Plaintiff-appellant, Therese McCafferty, appeals from the trial court's order granting the motions for summary judgment filed by the defendant-appellee, Cleveland Board of Education ("CBE"). The appellant filed this action pursuant to R.C. Chapter 4112 seeking redress in count one for age discrimination and in count two for discrimination based upon handicap. In count three the appellant

seeks damages for CBE's infliction of emotional distress. CBE filed an answer and two subsequent amended answers.

The appellant, an elementary school teacher, suffered a back injury in 1988 during the course of her employment. This back injury resulted in chronic pain and severe depression. Due to the difficulties brought about by her physical and mental health, and based upon her certification to teach reading, the appellant desired to teach a Title I reading class.[1] In its Title I program, CBE utilizes the "pull out" method, meaning that six to eight students at a time are pulled out of their homeroom and given reading instruction in a small group setting. In the appellant's opinion, a regular classroom contains more students, more stress, and requires constant standing. When teaching Title I, if McCafferty needed a few extra moments because of her health, she could request that the children remain in their classroom for a short time.

McCafferty taught in a regular classroom from 1987 until 1990. She was assigned to teach Title I reading from 1990 until 1994, when she was placed into an Accelerated Learning Class ("ALC").[2] CBE asserts that placing McCafferty in the ALC classroom was done to accommodate both her needs and those of the students. One day in 1995, after informing the principal that she was having difficulty, but receiving no response, McCafferty saw her students safely off to lunch, left the building, and did not return. The next day, McCafferty was hospitalized because of her depression.

The appellant filed her motion for partial summary judgment and CBE filed its motion for summary judgment on November 3, 1997. The appellant responded to the appellee's motion and CBE responded to the appellant's motion on December 8, 1997. On January 16, 1998, the court denied the appellant's partial motion for summary judgment and granted CBE's motion for summary judgment on counts one and two, the discrimination claims. The court specifically stated that count three remained pending.

On January 30, 1998, CBE filed its motion for summary judgment on appellant's claim for infliction of emotional distress. On February 13, 1998, the appellant filed a response to CBE's motion and filed a motion to reconsider the ruling made by the court on the first two counts of the complaint. On February

---

1. Patricia Bowman Jenkins is the Director of Compensatory Education for CBE and her area of responsibility includes the Title I program. At her deposition, Jenkins testified that Chapter I, or Title I, is a federal program designed to meet the needs of educationally deprived children and to develop support programs to compensate for those deficits.

2. An ALC allows the repeat first-grade children to be taken from the regular first-grade class and placed in a class by themselves. This strategy permits the regular first-grade teachers to implement a straight curriculum without having to provide the additional support work needed by the repeat students.

17, the depositions pertinent to the resolution of the case were filed. On February 24, 1998, CBE responded to the motion for reconsideration and also filed a motion to strike any new legal theories in the motion for reconsideration. The court denied the motion for reconsideration on March 2, 1998. On March 3, 1998, the court granted CBE's motion for summary judgment on the claim for infliction of emotional distress. This appeal was timely filed on March 27, 1998.

In order to determine this appeal, this court must review the factual allegations of the parties. The record below, including the depositions, reveals that appellant was employed by the CBE as an elementary school teacher during the 1967–1968 school year. The appellant left the Cleveland school system and returned in 1984. In 1987, McCafferty was assigned to teach second grade at the Paul L. Dunbar school, where Carol Glickhause was the principal.

In 1988, during the course of her employment, the appellant sustained a back injury. The appellant's back injury resulted in a medical leave from May to June 1990. Glickhause asked, "Why don't you just take a year off, medical leave?" The appellant's finances prohibited such an action. At some point during the spring of 1990, Glickhause offered the appellant a position as a Title I reading teacher. McCafferty informed Glickhause that her decision depended on her physical and mental health.

When the appellant returned to school in the fall of 1990, the Title I position had been given to a Ms. Mason. Prior to her return to school, she had informed Timothy Giles of the CBE personnel department that she wished to take the offered Title I position. The appellant felt that the decision to award the position to another teacher was shocking since she had fully discussed with Glickhause the pain and stress which resulted from work in a regular classroom.

The appellant had informed Glickhause that her doctors indicated that she should lie down during the day to relieve all pressure from her back. She was unable to accomplish this in a regular classroom. In the spring of 1990, McCafferty informed Glickhause that she could not function as a teacher in a full-sized classroom. The appellant testified that the offer by Glickhause of a Title I classroom in 1990 was not made in response to her complaint that she could not handle a full class.

In the summer of 1990, the appellant called the office of either Tim Giles or a Mr. Clements in order to find out where she would be reassigned subsequent to her medical leave. She never spoke with either man personally, but a message was left for her that the only position open in Cleveland was the third grade at Dunbar School. On August 10, 1990, the following letter, signed by Jerry Kiffer, M.A., and James H. Fry, M.D., was sent to CBE:

"To whom it may concern:

"I have worked with Ms. McCafferty for the past year as she has developed her stress-management skills. She has had a variety of physical symptoms that have diminished from stress-management training. Yet, she continues to experience back pain; pain which is aggravated by standing and work stress.

"I am writing to strongly suggest that Ms. McCafferty be given an opportunity to work in a smaller classroom setting with a few students rather than her present position. She is eager to return to productive work.

"If I can be of any further help, please contact me."

Also on August 10, 1990 the appellant sent a letter to Clements, the person in charge of elementary personnel for the CBE:

"Dear Mr. Clements,

"I took a medical leave from May 14 to June 14 of this year. I have had ten sessions of pelvic traction from Fairview Hospital.

"Although I still have some back pain I would like to return to work."

During the 1990 school year Principal Glickhause was on sabbatical. The interim principal was Dr. Arthur Caliguire. When the appellant began having increased physical difficulties, she shared with Caliguire the letter from Dr. Collins of Lutheran Hospital, which summarized the findings regarding her back injury, and the letter from Dr. Fry, the psychiatrist. McCafferty discussed with Caliguire her stress limitations, and requested an accommodation. The appellant believes that as a result of this conversation, and based upon her qualifications, she was placed in the Title I program.

In January 1992, Glickhause returned as principal of Dunbar. Between 1992 and 1994, Glickhause indicated to the appellant that there would be changes in the Title I program at Dunbar. McCafferty inquired of the Title I consultants assigned to Dunbar by CBE as to whether there were any other Title I positions in another school. When the consultant spoke to Glickhause, Glickhause stated that she had never said there would be a change.

In August 1994, Glickhause assigned the appellant to teach the ALC class. This class consisted of repeat first graders in need of additional support and was assigned two teachers. The appellant deposed that in August 1994, she spoke to Glickhause and informed her that it would be physically, mentally, and emotionally stressful for her to be placed back into a full classroom. She referred Glickhause to the letter which was already on file.

There was a conference with the teacher's union near the beginning of the 1994 school year regarding the appellant's move into the ALC class. During her deposition Glickhause was asked whether the union had informed her that the appellant should not be transferred into the ALC class. Glickhause testified that

she "used the union conference committee as a conference and a group that we could talk things over with" and "I don't recall them saying, don't do it and I don't recall them saying do do it." Glickhause stated that during the conference "we were looking for alternatives to accommodate students and, ultimately, [the appellant]."

Glickhause decided to transfer the appellant to the ALC class because the school was faced with a large number of first graders. Initially, all three reading teachers were asked if they would take a first-grade class. All three refused. The appellant initially agreed, but later refused. Rather than forcing the appellant into an uncomfortable situation, Glickhause looked for an alternative, the ALC class. Glickhause testified that she was "trying to figure out how we could still serve the students and accommodate [the appellant] at the same time."

When questioned about how she would deal with a teacher with depression, Glickhause responded, "I would question the ability—someone with a depression teaching. I would—if I was aware that they were under a depression, I would talk to them and I would then make a decision." She stated that if she is not aware that someone has depression, she could not act. If she was aware, she would have to take each individual case as it came. At the point she placed the appellant in the ALC class, Glickhause was aware that "it appeared she had some back problems. That's it. I knew nothing else."

Glickhause stated that she knew that sometimes the appellant's back ached more than at other times. Glickhause never saw the letter from the appellant's doctor. When asked if she was told about the letter, she stated that there may have been a reference to it when a decision was made to create the ALC class. When she learned of the letter, she "recognized that we were still putting her into a classroom that was still much easier to work in than a classroom that would contain twenty-five students." Glickhause testified that she did care what was in the letter, but that the appellant had already been accommodated by being placed in the ALC class. Glickhause testified that it was taken into consideration that the appellant would not be comfortable with a full class. Glickhause assumed that the appellant's difficulty was her back, and stated that she "could not understand why having a second teacher in the room would not accommodate [the appellant] better than being isolated in a room by herself."

Glickhause conceded during the deposition that in reaching her decision to place the appellant in the ACL, she had contacted neither the appellant's doctors nor anyone from the school board.

In her deposition, Glickhause testified that the appellant never said she had a bad back, but rather:

"A. I believe she said she didn't think she would be comfortable or could handle a first grade class. And since my knowledge was only of the back problem, I assumed that at that point.

"* * *

"Q. What was the procedure, what was the process of accommodation?

"A.—that was the accommodation because the prerogative, as you would know, having been an administrator, is that I could have required her to take that first grade class. I did not require because it would not have been comfortable for her and ultimately would not have been benefitted the children."

When asked whether she had considered the appellant's preference in classroom assignment, Glickhause responded:

"Yes, I gave it consideration. My problem was that I had a very large first grade population, and we needed some relief and in putting her in the ALC, rather than in the first grade class, appeared to satisfy the need for her back problems, because she had the additional support, and it was a building resolution. I also allowed Ms. McCafferty the opportunity to contact any other Chapter I teacher and to make the switch if that were possible. I told her to contact the Chapter I office, and to talk to other Chapter I reading teachers to see if they would be willing to do a building switch."

To highlight the discrepancy between the parties, the appellant points out that interrogatory number nine of the appellant's first set of interrogatories inquired: "Please explain in detail every attempt [CBE] made to accommodate [appellant's] disability." CBE's response was:

"At no time until the filing of a employment discrimination charge, wherein Ms. McCafferty alleged that she was discriminated as a result of her alleged disability, did Ms. McCafferty inform anyone associated with the Cleveland Board of Education that she was disabled. Similarly, at no time until the filing of her employment discrimination charge, did Ms. McCafferty request any accommodation for her alleged disability."

The appellant also asserts that Glickhause told her that she should look for another line of work. Glickhause testified that she did not know whether she had made such a statement, but that:

"My concern was her back. And if she felt that working in a classroom was difficult, there were alternative things that she could do, but in terms of using it in any way than being caring or being concerned, no.

"* * *

"I don't recall saying it. But I'm also not going to say that a discussion may not have been held. But only in—in the terms of, again, concern for her. Never in terms of using it to say that she was inadequate or not doing her job."

After the transfer, it was some weeks before the second teacher was hired and placed into the ALC classroom. McCafferty and a Ms. Ohlrogge, the other teacher, decided on their own to divide the class and teach in separate classrooms. McCafferty took the fifteen children with lower test scores.

On one day, Glickhause made a comment to the appellant that "your doctor must be very handsome, because you go to see him that often." The appellant interpreted this comment as ridicule. On several other occasions Glickhause made comments in the nature of "you're always going to the doctor."

The appellant testified that she heard Glickhause make comments regarding her age on several occasions. At one point Glickhause referred to the appellant as walking like an old lady. During a Halloween parade a reference was made to her inability to keep up because she was too old. This comment was made in front of other teachers and the children. McCafferty stated that there were other occasions that she could not recall at the moment.

The appellant requested that another Title I program be found. When asked how building switches worked, Glickhause testified the principals would work out a switch. Glickhause did not contact any other principals, she left that to the appellant.

The file contains the deposition of a Ms. Jenkins. She testified that when, at the building level, a teacher is to be moved, based upon the student enrollment or a change in fiscal needs of the program, the principal would initiate the change on the official document called an Employee Request Form. The form would be submitted to her office for approval for a determination of whether the move is fiscally sound. This decision is based on salary, enrollment, school allocation, and the approved educational plan. From her office, the Employee Request Form then goes to the Division of Personnel. The Division of Personnel determines whether the change will occur. Jenkins was not prepared to answer the question of whether her office received such a form as to the appellant.

The appellant also testified that Virginia Coleman succeeded Glickhause as principal of Dunbar. She expressed to Coleman concern for the stress level she felt, but she did not recall Coleman's response. In early 1995 she complained to Glickhause that she was having difficulty managing the unruly students in her classroom, especially with her back problems and stress-related health problems. She complained to other teachers as well.

The record contains an affidavit from Phyllis Paden, a third-grade teacher at Dunbar. Paden affirmed that she is a member of the teacher's union and that

she, along with the union, protested the appellant's transfer from the Chapter I third-grade class into a larger class.

Josephine Rivera, another teacher at Dunbar, affirmed that Glickhause transferred the appellant because she did not feel the appellant was "good enough" to teach Chapter I. Rivera affirmed that the class in which the appellant was placed was made up of repeaters, students with both academic and behavioral problems. Rivera also affirmed that "[the appellant] asked several times with the teacher's union to have a meeting so that her regular classroom would be balanced—a mix of repeaters and non-repeaters. This was never done." Rivera opined that the appellant should have remained in the Chapter I classroom, where she was a fine teacher, rather than being placed in a most difficult class of repeaters.

Mercia Sima testified that she is a second-grade teacher at Dunbar and that during the 1994–1995 school year she was a union representative for the Cleveland Teacher's Union. Sima stated that when the appellant was transferred from Chapter I, the teachers in Dunbar school felt that the transfer was unfair to the appellant and to the children. The union questioned Glickhause as to how she arrived at her decision. Glickhause informed the union that she used seniority, and that the last one in the program was the first one out of the program. Because the transfer followed the principle of seniority, the union did not protest. Sima affirmed that the appellant was transferred to a very difficult class. The appellant, through the union, requested a transfer but Glickhause stated that the class was stable, and she did not grant the requested transfer. The appellant had been injured in an incident at school, and the union used this physical disability issue as a way of arguing that the appellant should be transferred back into the Chapter I program. Sima affirmed that someone from the school stated, "There are no exceptions. If McCafferty could not handle the class, then she should take early retirement. There is a job to do, and the teacher must do it." The union was not aware of the appellant's mental disability. Sima stated that when they were unsuccessful in their argument that the appellant should be transferred back to the Chapter I program, they stressed that the needs of the children would be better served by breaking up the class of first-grade repeat students. This argument was also unsuccessful. When the appellant was transferred back into the classroom, the teachers in the building were concerned that this was not a proper match, and that a bad situation could develop in class.

Tracey Muniak, a teacher at Dunbar, along with each of these three teachers above, affirmed that McCafferty did very well as a Chapter I reading teacher. Muniak affirmed that the first grade given to the appellant in 1994–1995 was a difficult class, both academically and behaviorally.

The appellant sets forth five assignments of error. The fifth assignment of error will be considered first:

"The lower court erred in denying appellant's motion for reconsideration where additional issues of material facts were introduced, requiring trial by jury on her claims of disability and age discrimination."

■ Woven into the first two assignments of error is the question of whether any consideration should have been given to the appellant's motion for reconsideration. This court has held that interlocutory orders are subject to motions for reconsideration. *Lee v. Joseph Horne Co., Inc.* (1995), 99 Ohio App.3d 319, 650 N.E.2d 530; see, also, *Pitts v. Ohio Dept. of Transp.* (1981), 67 Ohio St.2d 378, 21 O.O.3d 238, 423 N.E.2d 1105, fn. 1. Filing a motion for reconsideration is appropriate where the court has not entered a decision, but has not yet put on a final entry of judgment. *Worrell v. Daniel* (1997), 120 Ohio App.3d 543, 552, 698 N.E.2d 494.

Thus, the appellant's motion for reconsideration was appropriately filed. However, the appellant has presented no evidence that the trial court failed to consider its additional evidence and arguments.

The appellant's fifth assignment of error is overruled.

The appellant's first and second assignments of error will be considered together. They are:

"The lower court erred in denying appellant's motion for partial summary judgment where appellant proved that she was a qualified individual with multiple disabilities and where appellee failed to accommodate those disabilities.

"The lower court erred in granting summary judgment to appellee where issues of material facts remained for trial on appellant's claim of disability discrimination."

The appellant argues that, on the issue of discrimination based upon handicap, the trial court erred in denying her motion for summary judgment and erred in granting CBE's motion for partial summary judgment.

■ This court reviews the lower court's grant of summary judgment *de novo*. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court applies the same test as the trial court. *Zaslov v. May Dept. Stores Co.* (Oct. 1, 1998), Cuyahoga App. No. 74030, unreported, 1998 WL 686266. Summary judgment is appropriately rendered when no genuine issue as to any material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, it appears from the evidence that reasonable minds can come but to one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is

made, that conclusion is adverse to that party. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 617 N.E.2d 1123, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267, and *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. A court is permitted to grant a motion for summary judgment where all of the tests provided in Civ.R. 56 are met. See *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265, 273–274.

 ■ It is settled that Ohio courts look to federal law to support a finding of discrimination under R.C. Chapter 4112. *Ohio Civ. Rights Comm. v. Case W. Res. Univ.* (1996), 76 Ohio St.3d 168, 666 N.E.2d 1376. The court noted that in the employment discrimination context, a "qualified handicapped person" means a handicapped person who can safely and substantially perform the essential functions of the job in question, with or without reasonable assistance. *Id.*

In *Csejpes v. Cleveland Catholic Diocese* (1996), 109 Ohio App.3d 533, 672 N.E.2d 724, this court set forth the requirements to establish a prima facie claim for handicap discrimination. The court held:

"To establish a prima facie claim of handicap discrimination to defeat a motion for summary judgment, Csejpes must present evidence to establish a genuine issue of material fact concerning whether (1) she is handicapped, (2) adverse action was taken by her employer, at least in part, because she was handicapped, and (3) even though she is handicapped, she can safely and substantially perform the essential functions of the job with reasonable accommodations. Ohio Adm. Code 4112–5–02. *Cox v. Commercial Parts & Serv.* (1994), 96 Ohio App.3d 417, 423, 645 N.E.2d 123, 126; *Jones v. BancOhio Natl. Bank* (Sept. 30, 1993), Franklin App. No. 93AP–246, unreported, at 6, 1993 WL 393842, citing *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 25 OBR 331, 496 N.E.2d 478.

"Ohio Adm.Code 4112–5–02(H) defines '[h]andicapped person' to include 'any person who presently has a handicap as defined by division (A)(13) of section 4112.01 of the Revised Code or any person who has had a handicap as defined by division (A)(13) of section 4112.01 of the Revised Code, who no longer has any functional limitation, but who is treated by a respondent as having such a handicap, or any person who is regarded as handicapped by a respondent.'

"R.C. 4112.01(A)(13) defines the term 'handicap' as follows:

" 'Handicap' means a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or impairment; or being regarded as having a physical or mental impairment." *Csejpes,* 109 Ohio App.3d at 537, 672 N.E.2d at 726–727.

Also in *Csejpes,* this court described the burden-shifting which occurs once the plaintiff has set forth a prima facie claim of discrimination:

"The 'establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee.' *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 216. Once the prima facie case is made, the burden of producing an explanation to rebut the prima facie case shifts to the defendant. Since a prima facie case has been made, the defendant must produce evidence that the adverse employment action* * * was taken 'for a legitimate, nondiscriminatory reason.' *Burdine, supra.*

" ' "The defendant must clearly set forth, through the introduction of admissible evidence," reasons for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action. * * * It is important to note, however, that although the *McDonnell Douglas [v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668] presumption shifts the burden of production to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." 450 U.S. at 253, [101 S.Ct. at 1093, 67 L.Ed.2d at 215]. In this regard it operates like all presumptions, as described in Rule 301 of the Federal Rules of Evidence * * *.' *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407, 416." *Csejpes,* 109 Ohio App.3d at 538–539, 672 N.E.2d at 728.

In the case *sub judice,* that McCafferty is disabled is not questioned by CBE. Likewise, CBE does not contest that the appellant is a qualified teacher who can safely and substantially perform the requirements of her job with a reasonable accommodation. On appeal, what CBE has placed at issue is notice of the appellant's psychiatric difficulties and whether it provided a reasonable accommodation by placing the appellant in the ALC classroom.

As the appellant points out, CBE in its answer to the appellant's first set of interrogatories stated that it had no knowledge of the appellant's disability and that an accommodation had never been requested. However, in her deposition, Glickhause indicates that she was attempting to balance the needs of Dunbar School and the needs of the appellant for an accommodation. Clearly, Glickhause's statements that she attempted to balance those conflicting needs presupposes knowledge of both the disability and the requested accommodation.

CBE also argues that it was not placed on notice of the appellant's mental handicap by the letter from Drs. Frye and Wiggins. Since the letter was sent to CBE itself, was signed by a psychiatrist, and was on the stationery of a company called "Psychological Development Center, Inc.," the appellant has met her

burden of producing evidence that CBE was on notice that the appellant has some type of psychological or psychiatric difficulty that required an accommodation.

 Turning to the reasonableness of the accommodation, the Ohio Supreme Court held in *Ohio Civ. Rights Comm.*, 76 Ohio St.3d 168, 666 N.E.2d 1376, that whether an accommodation is reasonable is a mixed question of law and fact. Here, there is every indication that CBE knew that the appellant was physically disabled, had notice that the appellant was mentally handicapped, and was informed by the appellant, other teachers, and the union that moving the appellant into the ALC class was not a good match of students and teacher. Despite all these indications, CBE forced the appellant into a classroom situation that arguably did not accommodate her disabilities. CBE, by and through principal Glickhause, refused to even explore the possibility of transferring the appellant to another school within the district. Instead, the burden was placed on the appellant to seek another position. The record is clear that requests for such a transfer must be made by the principal.

Taken as a whole, the record contains evidence of material issues of fact that preclude summary judgment in favor of CBE. Reasonable minds might differ both on the notice of the appellant's handicap, and on the issue of whether a reasonable accommodation was provided. The trial court erred in granting CBE's motion for summary judgment.

Likewise, the trial court did not err in denying the appellant's motion for summary judgment. Whether assigning the appellant to the ALC classroom to instruct fifteen students falls within the parameters set forth in the letter sent to the CBE by Drs. Frye and Wiggins is an issue of the reasonableness of the accommodation and presents a question of fact under *Ohio Civ. Rights Comm.*, 76 Ohio St.3d 168, 666 N.E.2d 1376.

The appellant's first assignment of error is overruled.

The appellant's second is well taken.

The appellant's third assignment of error is:

"The lower court erred in granting summary judgment to appellee where issues of material facts remained for trial on appellant's claim of age discrimination."

The appellant argues that it is prohibited under R.C. 4112.02(A) for an employer to discriminate against an employee on the basis of age. The appellant asserts that stereotyped remarks made by Glickhause at the same time she was subject to less favorable working conditions is direct evidence of ageism. The explicit ageist slurs made by Glickhause are evidence of the employer's bias

against older persons. The appellant also argues that her replacement teacher in the Title I reading program was younger and less qualified.

Age discrimination claims brought in state courts are construed and decided in accordance with federal guidelines and requirements. *Srail v. RJF Internatl. Corp.* (1998), 126 Ohio App.3d 689, 711 N.E.2d 264, citing *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 6 OBR 202, 451 N.E.2d 807. A prima facie showing of age discrimination may be shown by direct or indirect evidence. Where there is only indirect evidence, the burden shifting test from *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, is used.

The appellant is required to show that (1) she is a member of the statutorily protected class, (2) that she was discharged, and (3) that she was qualified for the position. A fourth requirement, that the replacement be younger than forty, was rejected in *O'Connor v. Consol. Coin Caterers Corp.* (1996), 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433. The U.S. Supreme Court determined that the requirement that plaintiff be replaced by someone under forty years of age was not an element needed to establish a prima facie case of age discrimination. However, in a case decided subsequent to *O'Connor, supra,* the Ohio Supreme Court once more set forth the four-part test. *Byrnes v. LCI Communication Holdings Co.* (1996), 77 Ohio St.3d 125, 672 N.E.2d 145.

This court takes note that discriminatory comments that are vague and remote in time have been held to be no more than stray remarks and are insufficient to establish pretext to discrimination. *Barney v. Chi Chi's, Inc.* (1992), 84 Ohio App.3d 40, 44, 616 N.E.2d 269, 272–273.

In this case, the appellant has cited only a few instances where Glickhause made comments to her regarding her age, and the appellant cannot remember when the remarks were made. For example, once Glickhause referred to the appellant as "walking like an old lady," but the appellant could not recall when this happened. In another instance, appellant could not walk as fast as the other teachers during a Halloween parade and Glickhause made some comment about the appellant being too old to keep up. The appellant could not recall the year this comment was made.

Further, when asked at her deposition how old she was when she was removed from the Title I program, the appellant answered that she was fifty-five or fifty-six. However, the appellant testified that she did not know the ages of Mason, her replacement, or of Smith, the other reading teacher. The facts indicate that the appellant recalled Glickhause mentioning age several times, but she does not recall how old Glickhause was when the comments were made.

The references to the appellant's age, while inappropriate, do not rise to the level of proof required to show discrimination based on age. When the appellant's vague testimony regarding Glickhause's comments are coupled with her lack of knowledge of the age of her replacement, it is clear that the trial court properly denied the appellant's motion for summary judgment and properly granted CBE's motion for summary judgment on this issue.

The appellant's third assignment of error is overruled.

The appellant's fourth assignment of error reads:

"The lower court erred in granting summary judgment to appellee where issues of material facts remained for trial on the appellant's claim of intentional infliction of emotional distress."

In this assignment the appellant asserts that CBE intentionally inflicted her emotional distress by ignoring her pleas for help, by assigning her difficult students, and by permitting Glickhause to ridicule her in front of colleagues, parents and students, taunting her when she fell, insulting her, and cutting off her medical benefits during her hospitalization.

This court has held:

"In order to recover on an action for intentional infliction of serious emotional stress four elements must be proved: 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' Restatement of Torts 2d (1965) 73, Section 46, comment d; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and, 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it,' Restatement of Torts 2d 77, Section 46, comment *j*." *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 34, 11 OBR 63, 66–67, 463 N.E.2d 98, 103–104. See, also, *Blanks v. Greater Cleveland Regional Transit Auth.* (June 11, 1998), Cuyahoga App. No. 72991, unreported, 1998 WL 308096, citing to *Rine v. Sabo* (1996), 113 Ohio App.3d 109, 118, 680 N.E.2d 647, 653.

This court has found that an action to recover for serious emotional distress may not be premised upon mere embarrassment or hurt feelings, but must be predicated upon psychic injury that is both severe and debilitating. *Pfleger v. BP Am., Inc.* (June 27, 1996), Cuyahoga App. No. 68874, unreported, 1996 WL 355290, citing *Uebelacker v. Cincom Systems, Inc.* (1988), 48 Ohio App.3d 268, 276, 549 N.E.2d 1210, 1219–1220.

Considering the facts in a light most favorable to the appellant, she was ridiculed by her employer on a few occasions and at times the comments were made in front of others. The comments made by her employer were at best thoughtless, and those made in front of others regarding her abilities and/or difficulties were inappropriate and unprofessional. However, even when considered together, the comments were not so extreme in degree and outrageous in character as to be outrageous. The trial court did not err in granting CBE's motion for summary judgment on the issue of intentional infliction of emotional distress.

The appellant's fourth assignment of error is overruled.

The judgment is affirmed as to counts two and three of the complaint, age discrimination and infliction of emotional distress, and reversed as to count one, discrimination based on handicap, and the cause is remanded on count one.

*Judgment accordingly.*

DYKE, P.J., and SPELLACY, J., concur.