Bernice L. ROELEN, Plaintiff,

v.

The AKRON BEACON JOURNAL,
et al., Defendants.

No. 501CV2087.

United States District Court,
N.D. Ohio,
Eastern Division.

April 25, 2002.

Edward L. Gilbert, Jana L. DeLoach, Law Office of Edward L. Gilbert, Akron, OH, for Plaintiff.

Andraea D. Carlson, Barbara J. Leukart, W. Eric Baisden, Jones, Day, Reavis & Pogue, Cleveland, OH, for Defendants.

## ORDER

GWIN, District Judge.

On February 25, 2002, Defendants Akron Beacon Journal and Dan Lias moved this Court for summary judgment as to Plaintiff Bernice L. Roelen's claims of employment discrimination, sexual harassment, retaliation, and intentional infliction of emotional distress [Doc. 101]. With regard to Plaintiff Roelen's claim of sexual discrimination, the defendants argue that Roelen cannot show she suffered a materially adverse employment action. In other words, defendants say that Roelen's claim of sexual discrimination fails because she is in substantially the same position that she enjoyed before.

As to Roelen's claim of sexual harassment, defendants say that Roelen fails to show that the alleged sexual conduct was sufficiently severe or pervasive enough to alter the conditions of her employment and to create a hostile or abusive work environment. Even if Plaintiff Roelen could show sufficiently abusive conditions, the defendants say her sexual harassment claim must be dismissed because Roelen failed to report harassing behavior under Defendant Akron Beacon Journal's harassment policy.

The defendants say that Plaintiff Roelen cannot establish a claim for retaliation. They say that her claim fails because she can show neither an adverse employment action nor the requisite causal connection between her engaging in protected activity and an adverse employment action.

Finally, the defendants seek dismissal of Plaintiff Roelen's state law claim of intentional infliction of emotional distress. As to the intentional infliction of emotional

distress claim, defendants say that Roelen offers no evidence of sufficiently outrageous behavior and offers no evidence of emotional distress sufficiently serious to make out a claim.

Finding that Plaintiff Roelen fails to show a legally sufficient adverse employment action, that she fails to show that she utilized an available mechanism for redressing sexual harassment, and that the defendants' conduct was insufficient to make out a claim for intentional infliction of emotional distress, the Court grants the defendants' motion for summary judgment.

## I. Factual background

Plaintiff Roelen complains about the conditions surrounding her employment at the Defendant Akron Beacon Journal. She also makes claim against Akron Beacon Journal manager Dan Lias, who she claims discriminated against her, sexually harassed her, and caused her severe emotional distress.

The Akron Beacon Journal hired Plaintiff Roelen on May 28, 1997, as a District Manager in circulation. In that position, Roelen worked with independent contractors, newspaper carriers, who delivered papers within the geographical area assigned to Roelen. Because of the difficulty with insuring that the independent contractors properly completed paper deliveries, the District Manager position could be difficult, especially in areas with less reliable independent contractors.

As a District Manager, Roelen's employment was controlled by a collective bargaining agreement between the Akron Beacon Journal and the Teamsters Union Local 473. Under that agreement, District Managers select districts based upon their seniority. District Managers with more seniority have first choice of the district they bid into, whereas District Managers with less seniority have lesser ability to select desirable districts. Under this scheme, Plaintiff Roelen bid into District 10, which operates out of the Gilchrist Road Distribution Center.

Defendant Dan Lias supervised Roelen for approximately one year, between November 1998 and December 1999. At that time, Defendant Lias served as a Zone Manager and supervised the District Managers operating out of the Gilchrist Road Distribution Center. As Zone Manager, Defendant Lias was responsible for the delivery of newspapers within his zone, including the delivery of newspapers within Roelen's district.

Regarding her gender discrimination claim, Plaintiff Roelen complains that Lias mistreated her, treatment that she contends was worse than the treatment given by Defendant Lias to other District Managers. Although she seems to concede that Lias treated everyone badly, Roelen says he treated her worse than the other District Managers. Roelen describes Lias's conduct as generally abusive:

Q. Do you remember exactly what he would yell about?

A. You need to get this district together, can't you do your job. Screaming at me in front of—in the middle of the warehouse. Not only—you know, he could take me into his office and tell me these things. He doesn't have to belittle me in front of my carriers. If they see that he disrespects me for the job that I do, how am I going to get respect from my carriers.

(Roelen Dep. at 124.)

Acknowledging his criticism of Roelen, Lias says that the criticism was motivated by problems with the delivery of newspapers in Roelen's district. (Roelen Dep. at 81–82.) Describing one incident in which she claims Lias overreached, Roelen testified:

Q. And did you believe that Mr. Lias was upset because the papers were going to be delivered late?

A. Yes.

(Roelen Dep. at 132.)

Although intemperate to her, Roelen acknowledged that Lias was also intemperate to men and other employees,[1] and that his aggressiveness seemed motivated by his concern for the delivery of newspapers.

During these times, the Akron Beacon Journal had a policy for the receipt of complaints of sexual harassment, a procedure that Roelen admittedly did not use. In November 1997, the Akron Beacon Journal distributed a policy statement to all employees regarding harassment. Roelen received the policy. In June 1998, the Akron Beacon Journal conducted a harassment training session with a representative from the Ohio Civil Rights Commission. Roelen attended this session. The Akron Beacon Journal repeated information about its policy forbidding sexual harassment in handouts and notices.

Under the Akron Beacon Journal's sexual harassment policy, complaints about sexual harassment were to be made to the Akron Beacon Journal's human resources department. Roelen worked for Lias for almost a year before she made a complaint. When she did complain in November 1999,[2] however, instead of following the policy's guidelines, Roelen made a complaint to Home Delivery Manager James DeLuca. Plaintiff Roelen described the complaint:

A. Yes, I told him about each episode that happened that I told you, how [Lias] would scream at me, belittle me. Just he would say his one-liners and just—he was just nasty.

(Roelen Dep. at 147.)

After receiving Roelen's complaints, DeLuca counseled Lias about Roelen's stated concerns with the treatment she was receiving. Lias then apologized to Roelen.[3] Plaintiff Roelen did not complain further to DeLuca, and in her complaints to DeLuca in November 1999, she never mentioned any sexual comments made by Lias.

Although she did not complain to DeLuca or other Akron Beacon Journal management about any further problems with Lias, Roelen says that Lias made other inappropriate comments, including attempts at humor by asking whether she had engaged in sexual relations. Other employees offer evidence that Lias unfairly criticized Roelen, that this treatment improved for a time after DeLuca spoke to Lias, but that it reverted to intemperate behavior again. These employees, including Bill Thomas, describe the conduct as badgering, but not directly sexual. (Thomas Aff. ¶¶ 3, 5–8; Durby Aff. ¶¶ 4, 6.)

Shortly after complaining to DeLuca and receiving Lias's apology, Roelen bid on an opening in District 29 and was ac-

---

1. Roelen testified:

   A. I thought you meant to district managers. On the phone, yes, he screamed at that carrier and then Frank, the carrier, he screamed at them. And then he got into a screaming match with—what is her name? She was one of my carriers. She ended up quitting.
   (Roelen Dep. at 140.)

2. While Plaintiff Roelen says that she talked to James DeLuca in November 1999, DeLuca

claims that this conversation actually took place in December 1999. (DeLuca Dep. at 45.)

3. Plaintiff Roelen testified:

   A. My conversation with him was when he came up to me and he apologized to me, put out his hand. He apologized to me and said, "I heard that you feel I bully you and I apologize from the bottom of my heart." And he shook my hand.
   (Roelen Dep. at 151.)

cepted. On January 1, 2000, Roelen began working in District 29 at the Front Street Distribution Center. She later bid on a position in District 14 and testified that she liked District 14. (Roelen Dep. at 207.)

After choosing the District 29 position, Roelen had little direct contact with Lias, who no longer supervised her. In February 2000, the Akron Beacon Journal promoted Lias to the position of Home Delivery Manager. While in that position, Lias no longer directly supervised Roelen.

As part of her claim of sexual discrimination and sexual harassment, Roelen complains about Defendant Lias's conduct at an April 12, 2000, meeting with District Managers, a meeting that Roelen attended. Lias called the meeting to discuss issues that affected the circulation workforce.

Plaintiff Roelen says that Lias made offensive statements at the April 12, 2000, meeting. At the time of the meeting, Roelen had recently learned that she was pregnant. She told some colleagues about her news and some statements were made before the meeting announcing her pregnancy. Roelen says that Lias was in a position to hear the comments about Roelen's pregnancy. Lias denies that he knew Roelen was pregnant or that he heard comments about her pregnancy before the meeting.

During the meeting, Lias discussed the contract that the Akron Beacon Journal had entered to deliver the Wall Street Journal. Receiving complaints about the additional work, Lias made the following statement:

> Finally I put my hand up and said, "Folks, understand we have a contract with the Wall Street Journal to be a delivery agent. This is our roll out schedule and we have to make sure it gets done." I used the analogy that "This is a lot like a nine month pregnant

lady. If she is going to have the baby and the time comes, even if she crosses her legs the baby is still going to come."

(Lias Dep. at 160.)

After this statement, other employees made public comments announcing Roelen's pregnancy. Roelen says Lias then asked her, in front of several people: "So Bernice, do you know whose it is?" (Roelen Dep. at 176.) Because of these comments, Plaintiff Roelen filed a grievance through her union. In that grievance, Roelen complained about Lias's comments at the April 12, 2000, meeting regarding the paternity of her child. She did not say that Lias had made any other offensive statements to her.

After receiving her grievance, the Akron Beacon Journal counseled Lias and gave him a downgraded evaluation. Lias understood the evaluation to be a reprimand:

> A. The counseling sessions that I had were severe in my mind. They told me point-blank that I was wrong. I took that to heart. When I saw it on my evaluation, I took that to heart. So when you say what happened to you, I take great pride in my job. I take great pride in the way I do things, so in my mind, yes, I was reprimanded.

(Lias Dep. at 213.)

Plaintiff Roelen continued working after the April 12, 2000, meeting. Then, on May 9, 2000, she went on a paid leave of absence. She filed a charge alleging sexual discrimination on May 31, 2000. She filed this action on August 30, 2001.

Roelen continues working as a District Manager for the Akron Beacon Journal. Without problem, she has twice bid into better districts. She makes no complaints about conditions in those districts.

Throughout her employment as a District Manager for the Akron Beacon Jour-

nal, Roelen's conditions of employment remained largely the same. Her job and job duties have never changed, and her salary and benefits are the same as the salary and benefits given to other District Managers. The Akron Beacon Journal has never suspended or discharged her or even threatened her with discharge.

## II. Standard of Review

Summary judgment is appropriate when the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the nonmoving party's case. *See Waters v. City of Morristown,* 242 F.3d 353, 358 (6th Cir.2001). A fact is material if its resolution will affect the outcome of the lawsuit. *See Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See id.*

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *See Nat'l Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir.1997). Ultimately, the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All–Lock*

*Co.,* 96 F.3d 174, 178 (6th Cir.1996) (internal quotations marks omitted).

## III. Discussion

### A. Sexual Discrimination

Plaintiff Roelen alleges gender discrimination under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–2 (1964). Title VII of the federal civil rights statute states: "It shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ...." 42 U.S.C. § 2000e–2(a)(1). Plaintiff Roelen alleges two varieties of gender discrimination: disparate treatment on the basis of gender and sexual harassment. The Court first deals with her claim of disparate treatment before turning to her claim of sexual harassment.

Plaintiff Roelen claims that the Akron Beacon Journal treated her differently because she was a woman. Specifically, she says that Lias criticized her work using different standards and in a different fashion from the way he criticized similarly situated men.

In seeking to establish disparate treatment motivated by gender, Roelen relies solely upon the familiar tripartite test in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* framework, an employee who cannot show direct evidence of gender discrimination can create an inference of gender discrimination when she shows that: "(1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified, and (4) she was treated differently than similarly-situated male employees for the same or similar conduct." *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 928 (6th Cir.1999) (citing *Mitchell v.*

*Toledo Hosp.,* 964 F.2d 577, 582–83 (6th Cir.1992)).

■ Defendant Akron Beacon Journal principally contends that Roelen fails to show evidence that she suffered a sufficiently adverse employment action. As noted above, Roelen was not fired, suffered no lost pay, and had an opportunity to bid on and receive new assignments.

In *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876 (6th Cir.1996), the Sixth Circuit found that a plaintiff was "required to show, as part of her prima facie case, that the employer's actions about which she complains were 'materially adverse.'" *Id.* at 885. In *Bowman v. Shawnee State University,* 220 F.3d 456 (6th Cir.2000), the Sixth Circuit further explained,

> "[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."

*Id.* at 461–62 (alteration in original) (quoting *Hollins v. Atlantic Co.,* 188 F.3d 652, 662 (6th Cir.1999)).

The Sixth Circuit has consistently held that unless employment actions involve some significant detriment, they are not materially adverse and, thus, not actionable. *See, e.g., Jacklyn,* 176 F.3d at 930 (holding that "neither requiring plaintiff to work at home while she was recovering from out-patient surgery, nor rejecting computer expenses that previously had been approved, were materially adverse employment actions"); *Jackson v. City of Columbus,* 194 F.3d 737 (6th Cir.1999) (holding that the suspension of a police chief with pay was not an adverse employment action); *Kocsis,* 97 F.3d at 885 (holding that "reassignments without salary or work changes do not ordinarily constitute adverse employment decisions in employment discrimination claims").

■ De minimis employment actions are not materially adverse and therefore not actionable. *See Bowman,* 220 F.3d at 462; *Virostek v. Liberty Township Police Dep't,* 2001 WL 814933, at *7, 14 Fed. Appx. 493 (6th Cir.2001) (holding that a one-day suspension without pay that was never served is not an adverse employment action); *see also Krause v. City of La Crosse,* 246 F.3d 995, 1000 (7th Cir. 2001) (holding that a letter of reprimand is not an adverse employment action unless accompanied by some other action); *Ribando v. United Airlines, Inc.,* 200 F.3d 507, 511 (7th Cir.1999) (holding that a letter of concern in personnel file standing alone is not an adverse employment action); *Speers v. Univ. of Akron,* 189 F.Supp.2d 759 (N.D.Ohio 2002).

Plaintiff Roelen shows no materially adverse employment action. As indicated above, Roelen continued in her same position, at her same pay, with her same responsibilities, and with her same rights to seek other positions. In fact, the only adverse employment consequence that Roelen points to is that she took a different District Manager's position, a position in a better geographical area. Absent the claimed gender discrimination, Roelen contends she would have rather stayed in a much more difficult area to receive the satisfaction of conquering a terrible district. Even were this a plausible argument, going to a better district, with the same pay and benefits, and with the same responsibilities, simply is not a materially adverse employment action. Without any showing of a materially adverse employment action, Plaintiff Roelen's gender discrimination claim fails.

## B. Sexual Harassment

■ Plaintiff Roelen also makes a separate claim of sexual harassment. To prove such a claim, Plaintiff Roelen needs to show either quid pro quo sexual harassment or hostile work environment sexual harassment. She makes no attempt to show quid pro quo sexual harassment. *See Kauffman v. Allied Signal, Inc.,* 970 F.2d 178, 185–86 (6th Cir.1992) (explaining that to state a claim for quid pro quo sexual harassment, a plaintiff must show that she was subject to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors and her submission to the unwelcomed advances was an express or implied condition of receiving job benefits or that her refusal to submit to her supervisor's sexual demands resulted in a tangible job detriment). Plaintiff Roelen makes no claim that Defendant Lias made sexual advances toward her or conditioned any employment benefits upon her submission to a demand for sexual favors.

■ In *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Supreme Court found that a hostile work environment occurs when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Id* at 21, 114 S.Ct. 367 (internal citation and quotation marks omitted). Evidence that the conduct at issue was so severe or pervasive as to create a hostile work environment "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. 367.

■ In *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), the Supreme Court held that an employer has an affirmative defense to a hostile work environment claim that did not result in a tangible employment action. To establish this affirmative defense, the employer must show "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* at 765, 118 S.Ct. 2257; *Faragher v. Boca Raton,* 524 U.S. 775, 778, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). According to the court in *Caridad v. Metro–North Commuter Railroad,* 191 F.3d 283 (2d Cir.1999), "[a]n employer need not prove success in preventing harassing behavior in order to demonstrate that it exercised reasonable care in preventing and correcting sexually harassing conduct." *Id.* at 295. Rather, implementing an antiharassment policy with complaint procedures can satisfy the first prong of the affirmative defense.

■ *Ellerth* comports with congressional intent to encourage self-regulating procedures: "Title VII is designed to encourage the creation of antiharassment polices and effective grievance mechanisms." *Ellerth,* 524 U.S. at 764, 118 S.Ct. 2257.

Defendant Akron Beacon Journal had such a policy in place at the time Roelen claims Defendant Lias's behavior was sexually harassing. The Defendant Akron Beacon Journal implemented and enforced policies explicitly prohibiting sexual harassment in the workplace with procedures to deal with violations of those policies.[4] It distributed the policy statement

4. Specifically, the Akron Beacon Journal's sexual harassment policy states in relevant part:

to all of its employees with their paychecks. In June 1998, the Akron Beacon Journal sponsored a mandatory harassment training session presented by a representative from the Ohio Civil Rights Commission, which Plaintiff Roelen attended. At the meeting, each employee received a handout detailing the proper manner in which to report offensive behavior. Further, the Akron Beacon Journal continued to post notices and to include the antiharassment policy statement with employees' paychecks.

Here, no dispute exists that the Akron Beacon Journal had a procedure for the receipt and correction of complaints of sexual harassment. As to the second element of the affirmative defense described in *Ellerth* and *Faragher*, no evidence shows that Roelen complained to the human resources department, as provided in the policy.

Despite being made aware of the Akron Beacon Journal's policy regarding harassment as well as the proper procedures by which to report harassing behavior, Plaintiff Roelen did not avail herself of these procedures. She did not report Defendant Lias's inappropriate remarks to the Akron Beacon Journal's human resources department. She never filed a complaint under Defendant Akron Beacon Journal's sexual

harassment policy. Instead, in November 1999, Roelen complained to then-Home Delivery Manager James DeLuca about Lias's conduct. As described above, she complained that Lias treated her shabbily. Little evidence suggests that she attributed Lias actions to sex discrimination, as opposed to general bad temperament. (Roelen Dep. at 149.) DeLuca responded appropriately and spoke to Lias. Lias followed this discussion with DeLuca with an apology to Roelen.

Plaintiff Roelen now says that soon after her discussion with DeLuca, Lias began making offensive and crude statements to her. But she never complained about any statements to the Akron Beacon Journal. She made no complaint under the defendant newspaper's sexual harassment policy until after the April 12, 2000, meeting. Yet, when she complained about Lias's statement made at the April 12 meeting regarding the paternity of her child, she did not complain about any other sexually offensive remarks. She never took advantage of the reporting opportunities under the Akron Beacon Journal's sexual harassment policy. In *Williams v. General Motors Corp.*, 187 F.3d 553 (6th Cir.1999), the Sixth Circuit held that "a demonstration of such failure [to make use of an available complaint procedure] will normally suffice

Sexual harassment and any other work-related harassment ... constitute a violation of this policy.

.  .  .  .  .

The Beacon Journal will not tolerate harassment of its staffers by anyone—supervisors, other staffers or people doing business with the Company.
Violations of this policy will be taken seriously. The Human Resources Department will conduct a confidential investigation of all complaints. Those with merit will result in disciplinary action, which may include termination.

.  .  .  .  .

If you have questions about what sexual or other harassment is, if you feel you may

have been a victim of sexual or other harassment or if you have observed sexual or other harassment by others, you should talk to your Human Resources generalist or the Human Resources manager or vice president.
Because these are sensitive issues and may be difficult to discuss, you may also want to contact the Employee Family Assistance Program (EFAP).
(Roelen Dep. Ex. 6.)

to satisfy the employer's burden under the second element of the defense." *Id.* at 567.

■ Because the Akron Beacon Journal had an antiharassment policy with reporting procedures in place, and Plaintiff Roelen unreasonably failed to take advantage of that opportunity, Defendant Akron Beacon Journal establishes the affirmative defense outlined in *Ellerth* and *Faragher.* Therefore, even if Defendant Lias's conduct was offensive,[5] Plaintiff Roelen's sexual harassment claim necessarily fails.[6]

### C. Retaliation

■ Plaintiff Roelen also makes a claim that the defendants retaliated against her for engaging in protected activity. To state a prima facie case of retaliation, Plaintiff Roelen must prove: (1) that she engaged in protected activity, (2) that she suffered an adverse employment action, and (3) that a causal connection exists between the protected activity and the adverse employment action. *See Penny v. United Parcel Serv.,* 128 F.3d 408, 417 (6th Cir.1997); *Mack v. B.F.*

*Goodrich Co.,* 121 Ohio App.3d 99, 104, 699 N.E.2d 97, 100 (1997).

■ As discussed above, Plaintiff Roelen cannot make out a claim that she suffered an adverse employment action. According to the Sixth Circuit in *Kocsis,* an adverse employment action is "a materially adverse change in the terms of [the plaintiff's] employment." *Kocsis,* 97 F.3d at 885. To be materially adverse, the change must be a matter of real significance, such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* at 886 (internal citations and quotation marks omitted).

■ Plaintiff Roelen continued in her same position, at her same pay, with her same responsibilities, and with her same rights to seek other positions. She did not receive a demotion, but rather was able twice to bid into districts that were considered better than District 10. Roelen argues that the Akron Beacon Journal nevertheless retaliated against her by re-

5. Because Plaintiff Roelen failed to take advantage of Defendant Akron Beacon Journal's antiharassment policy, the Court need not reach the issue of whether Defendant Lias's conduct was offensive enough to create a hostile work environment. However, the Court notes that Defendant Lias's conduct was likely not sufficiently severe or pervasive to cause Plaintiff Roelen's work environment to be hostile. In *Bowman v. Shawnee State University,* 220 F.3d 456 (6th Cir.2000), the Sixth Circuit held that a supervisor's rubbing the plaintiff's shoulder, grabbing the plaintiff's buttocks, pushing the plaintiff, and making several suggestive remarks was not severe or pervasive enough to create a hostile work environment. *See id.* at 464. Similarly, in *Garcia v. ANR Freight System, Inc.,* 942 F.Supp. 351 (N.D.Ohio 1996), the court held that three incidents of sexual harassment, which occurred over a five-day period, and included the alleged harasser grabbing the

plaintiff's head and guiding it toward his lap, asking to spend the night in her hotel room, and brushing his hand against the plaintiff's breast, were insufficient to establish a hostile work environment. *See id.* at 356. Here, Plaintiff Roelen alleges that Defendant Lias made several inappropriate comments over a period of time. This does not appear to rise to the level of sufficiently severe or pervasive conduct to create a hostile work environment.

6. According to the overwhelming majority of the Circuits, Plaintiff Roelen cannot maintain a claim under Title VII against Defendant Lias in his individual capacity. *See, e.g., Wathen v. Gen. Elec. Co.,* 115 F.3d 400, 404–05 (6th Cir.1997) ("A majority of our sister circuits that have addressed this issue have held that an employee/supervisor, who does not otherwise qualify as an 'employer,' cannot be held individually liable under Title VII and similar statutory schemes.").

quiring that she attend certain meetings at which Defendant Lias would be present. This, however, does not qualify as an adverse employment action because she was required to attend those meetings before filing a grievance and all other District Managers were also expected to attend the same meetings. Further, even if Roelen could show that being required to attend the same meetings she had been expected to attend throughout her employment with the Akron Beacon Journal constituted an adverse employment action, she cannot show the necessary causal relationship. She offers no evidence that requiring her to attend the meetings was in any way a result of her participating in a protected activity.

Because Plaintiff Roelen cannot prove an adverse employment action or show the necessary causal relationship, her retaliation claim must fail.

### D. Intentional Infliction of Emotional Distress

■ Roelen also brings an Ohio state law claim against the defendants for intentional infliction of emotional distress. To recover on an intentional infliction of emotional distress claim, Plaintiff Roelen must prove four elements:

(1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community," (3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and (4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it."

*Pyle v. Pyle*, 11 Ohio App.3d 31, 34, 463 N.E.2d 98, 103 (1983) (quoting Restatement (Second) Torts § 46 cmts. d, j (1965)); *see also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995).

■ "When claiming an intentional infliction of mental distress, only that conduct which exceeds 'all possible bounds of decency' is actionable." *Davis v. Billow Co. Falls Chapel*, 81 Ohio App.3d 203, 207, 610 N.E.2d 1024, 1026 (1991). For the conduct to qualify as sufficiently extreme and outrageous, " '[g]enerally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!' " *Yeager v. Local Union 20, Teamsters*, 6 Ohio St.3d 369, 376, 453 N.E.2d 666, 671 (1983) (quoting Restatement (Second) Torts § 46, cmt. d (1965)).

■ The facts in the present case do not arouse such a level of resentment. Ohio courts have repeatedly held that even admittedly cruel and insensitive conduct does not rise to the level of the extreme and outrageous conduct required to support recovery for intentional infliction of emotional distress. *See e.g., McCafferty v. Cleveland Bd. of Educ.*, 133 Ohio App.3d 692, 707–08, 729 N.E.2d 797, 807–08 (1999) (finding no evidence of sufficiently extreme behavior in a situation in which a supervisor ridiculed an employee by reciting thoughtless, inappropriate, and unprofessional comments); *Myers v. Goodwill Indus.*, 130 Ohio App.3d 722, 729, 721 N.E.2d 130, 134 (1998) (finding no basis for an intentional infliction of emotional distress claim although the plaintiff's supervisor yelled at her for being on the phone while she called 911 for a medical emergency in the store, regularly criticized her, disagreed with her, and generally humiliated her); *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 163, 677 N.E.2d 308, 329

(1997) (finding that an employer telling co-workers not to associate with the plaintiff, ordering supervisors to write down everything the plaintiff did, and secretly filming the plaintiff for two days was not sufficiently outrageous conduct).

■ Plaintiff Roelen fails to offer evidence that Defendants Akron Beacon Journal's or Lias's conduct was so outrageous or extreme as to be utterly intolerable. Plaintiff Roelen shows no evidence of extreme behavior on Defendant Akron Beacon Journal's part. And while Defendant Lias's analogy to pregnancy when discussing the delivery of the paper, his questioning the paternity of Plaintiff Roelen's child, his yelling at Roelen and other employees, and his generally insulting demeanor are all in poor taste, such behavior does not rise to the level of the outrageous conduct necessary to support a claim for intentional infliction of emotional distress.

## IV. Conclusion

For the foregoing reasons, the Court grants the defendants' motion for summary judgment as to Plaintiff Roelen's claims for employment discrimination, sexual harassment, retaliation, and intentional infliction of emotional distress.

IT IS SO ORDERED.